# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3027

_____

Marlene Betz,                                          *
                                                       *
        Appellant,                              *
                                                       *   Appeal from the United States
    v.                                            *   District Court for the
                                                       *   District of Minnesota.
Michael Chertoff, Secretary,                           *
Department of Homeland Security,                       *
                                                       *
        Appellee.                               *

_____

Submitted: June 11, 2009
Filed: August 28, 2009

_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After leaving her job with the Department of Homeland Security, Marlene Betz brought an action against DHS under the Age Discrimination in Employment Act (ADEA). *See* 29 U.S.C.A. § 633a. She claimed that Mark Cangemi, her supervisor throughout her employment, denied her upgrades and related salary increases on several occasions and eventually constructively discharged her because of her age and in retaliation for her having filed an EEO charge alleging age discrimination. The

district court[1] granted, in part, DHS's summary judgment motion for failure to comply with administrative deadlines. The court then held a bench trial on Ms. Betz's claim that she was constructively discharged because of her age and entered judgment for DHS on that claim. Ms. Betz appeals and we affirm.

In 1995, Ms. Betz began working in the St. Paul office of the Immigration and Naturalization Service as a secretary at the GS-5 pay-grade level. Her supervisor, Mr. Cangemi, was the assistant district director for investigations. In 1997, INS upgraded Ms. Betz from a GS-5 to a GS-6 after having conducted what is called a desk audit of her job. (The government may upgrade an employee's position without requiring the employee to compete for a different job by conducting a desk audit, in which the government reviews the tasks that the employee is performing to determine whether she is properly classified.) Ms. Betz requested a desk audit in 1998, and as a result was upgraded the next year to a GS-7. But before that upgrade, in August, 1999, Ms. Betz had filed an EEO complaint asserting that she had not received the requested desk audit because of her age; unbeknownst to her, Mr. Cangemi had already approved her desk audit request. After 1999, Mr. Cangemi ceased giving Ms. Betz annual performance appraisals, did not revise her job description, and denied her later requests for an increase in her GS-7 pay-grade level (though she received scheduled step increases within that level). Ms. Betz resigned in November, 2003, shortly after Mr. Cangemi refused her last upgrade request.

In early 2003, when the Department of Homeland Security was created, the Bureau of Customs Enforcement and INS merged to form Immigrations and Customs Enforcement (ICE), a division of DHS. The INS St. Paul office, where Ms. Betz worked, had been responsible for immigration investigations in three states. When DHS was formed, that office acquired responsibility for two additional states and

---

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

Customs matters and became a so-called Special-Agent-in-Charge (SAC) Office of ICE, with Mr. Cangemi as the acting SAC. Ms. Betz remained the only administrator-secretary in the office, and the volume and complexity of her workload increased. According to Ms. Betz, her new duties included those that GS-11 employees performed and thus she should have been upgraded from GS-7 to GS-11.

Ms. Betz asked Mr. Cangemi for an upgrade in the spring of 2003 and he said that he would check into it. When he did not mention it again, she again asked him on October 1; she mentioned her additional duties and told Mr. Cangemi that if she did not get an upgrade she would be forced to retire. He responded that there was nothing that he could do. She brought up the topic for the last time on the morning of 29 October. Mr. Cangemi testified at trial that he told her "categorically ... that it was not going to happen." Ms. Betz testified, in turn, that she felt that given her workload and "not seeing any opportunity of being advanced in grade or being compensated for that it didn't leave a whole lot of opening for me to do. ... it was either continue working at the grade I was being paid, doing the level of work I was doing, or retiring. And I just felt I had no options." She told Mr. Cangemi at that time that she was going to retire. She was sixty-five years old.

That afternoon, Mr. Cangemi came into the break room while Ms. Betz was there. She testified that he told her that there was nothing that he could do about her "demands" for an upgrade, and that if she was upset, she should go home and return when she completed her paperwork for retirement. She testified that she felt intimidated by his presence. At trial, Mr. Cangemi testified that Ms. Betz seemed upset when he saw her in the break room and that he told her that she could go home, but he denied mentioning her completing any paperwork.

Ms. Betz filed this action, contending that because of her age and in retaliation for her 1999 EEO complaint, Mr. Cangemi failed to upgrade her so that she would be

paid commensurate with her duties and that his failure to do so resulted in her constructive discharge.

## I.

Ms. Betz argues that the district court erred in several ways in entering judgment for DHS following a bench trial on her claim that she was constructively discharged because of her age. We review the district court's factual findings, including the ultimate determination of whether discrimination occurred, for clear error, and its legal conclusions *de novo*. *See* Fed. R. Civ. P. 52(a); *Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 647 (8th Cir. 2009); *Tadlock v. Powell*, 291 F.3d 541, 546 (8th Cir. 2002). Rule 52(a)(6) directs us to "give due regard to the trial court's opportunity to judge the witnesses' credibility." At the close of the evidence, the district court (citing Fed. R. Civ. P. 50, which governs judgment as a matter of law in a jury trial) concluded that Ms. Betz did not make out a case of constructive discharge, but it also made factual findings in support of its judgment for DHS. We review the court's findings for clear error and need not determine whether the evidence could have supported a judgment in favor of Ms. Betz.

## A.

In her brief, Ms. Betz first contends that the district court erred in finding that she was not discriminated against on account of her age. She begins by referring to evidence that she says shows that Mr. Cangemi gave false reasons for denying her an upgrade, and that a factfinder could infer from their falsity that the given reasons were a pretext for age discrimination. *See Loeb v. Best Buy Co.*, 537 F.3d 867, 873 (8th Cir. 2008). We agree that an employer's false explanation may support – though it does not require – an inference of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000). But the question of what inferences the evidence could have supported is at best tangential to our limited standard of review, which requires us to accept the district court's finding that Mr. Cangemi did not discriminate against Ms. Betz on account of her age unless, after having reviewed the

evidence, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Littleton*, 568 F.3d at 647; *see* Fed. R. Civ. P. 52(a). We are not convinced that the district court made a mistake in failing to infer an impermissible discriminatory animus on Mr. Cangemi's part from this evidence.

Ms. Betz also relies on a conversation that she had with Mr. Cangemi as evidence that he discriminated against her because of her age. In July, 2001, Mr. Cangemi asked Ms. Betz about her retirement plans shortly after a co-worker about her age had retired. She testified that the inquiry upset her and said that she was going to see if a buyout was available. Mr. Cangemi did not bring up the topic again. The court found that "[i]n the world, people ask each other what their plans are for the future," and that Mr. Cangemi's "simple inquiry ... was not an indication of discrimination based on age." The court added that although age "cannot be permitted to be the determining factor, [i]n this case, there is no indication that this was a determining factor of anything." We have held that "[r]easonable inquiries into an employee's retirement plans do not permit an inference of age discrimination," *Lewis v. St. Cloud Univ.*, 467 F.3d 1133, 1137 (8th Cir. 2006) (internal quotation marks and citation omitted), and thus the court's failure to infer bias from Mr. Cangemi's question cannot be clear error.

Ms. Betz based her age discrimination claim, in part, on her assertion that similarly situated younger employees were classified as GS-11, as compared to her GS-7 grade. To prove discrimination by comparing herself to others, Ms. Betz had to show that the other employees were younger than she and were similarly situated "in all relevant respects." *See Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691-92 (8th Cir.2002). We will overturn the district court's finding that the employees were not similarly situated only if it is clearly erroneous. *See Hayes v. Invesco, Inc.*, 907 F.2d 853, 856 (8th Cir. 1990). To be similarly situated two employees ordinarily must deal with the same supervisor or the decision-maker must be the same in both instances.

*See Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1043 (8th Cir. 2007). Ms. Betz maintains that the district court's approach to determining whether an employee was comparable to her "was too restrictive under the circumstances."

Here the district court found, based on evidence in the record, that Mr. Cangemi had no authority over the allegedly similarly situated employees when their GS-11 status was authorized. Al Oswald, one of the employees whom Ms. Betz compared herself to, worked in the Omaha, Nebraska, INS office. He was younger than Ms. Betz when his supervisor chose him for a GS-11 position. There was evidence that Mr. Cangemi had nothing to do with that decision, and his office did not even have authority over the Nebraska office at the time. Ms. Betz argues that Mr. Oswald is nonetheless similarly situated because by the time he began working in the GS-11 position in Omaha, DHS had been formed and Mr. Cangemi was in charge of a district that included Nebraska. But the relevant decision had already been made, and Ms. Betz has presented no evidence to show that Mr. Cangemi was involved in, or even aware of, Mr. Oswald beginning his GS-11 duties. We see nothing that would compel the district court to deem him similarly situated to Ms. Betz.

Ms. Betz also contended that her salary grade should have been compared to that of Barbara Seamans in the St. Paul office, whose pay-grade level was GS-11. The district court stated that it did not know Ms. Seamans's age and Ms. Betz has not indicated where we might find that information in the record. Nor have we seen it. The district court found, moreover, that Ms. Seamans was upgraded to GS-11 status before Mr. Cangemi had any authority over her, and Ms. Betz has offered us no evidence to the contrary. We see no basis for determining that the district court clearly erred in finding that Mr. Oswald and Ms. Seamans were not similarly situated in all relevant respects to Ms. Betz.

We believe that Ms. Betz's evidence of age discrimination was, at best, weak, and we thus cannot conclude that the district court clearly erred by finding that none existed.

Ms. Betz argues in the alternative that the district court erroneously excluded evidence and thereby prevented her from showing that Mr. Cangemi discriminated against her based on her age. But Ms. Betz did not offer into evidence many of the documents that she now contends were wrongly excluded. She maintains that we may nevertheless address the court's "exclusion" of these items because she was precluded from presenting them based on a statement that the court made during a hearing on DHS's summary judgment motion. We disagree.

As we have said, the district court granted partial summary judgment to DHS based on Ms. Betz's failure timely to seek administrative remedies. Federal employees generally must report discrimination to an EEO counselor within 45 days of an occurrence. 29 CFR § 1614.105(a)(1). Because Ms. Betz did not contact an EEO counselor about any of her claims in this case until November 5, 2003, the court concluded that she could not proceed with any claims based on occurrences before September 21, 2003, which is 45 days before November 5. When ruling on the summary judgment motion at the close of the hearing, the court said that Ms. Betz "may not present any evidence of discriminatory or retaliatory acts prior to the 45-day period," and Ms. Betz relies on these words to excuse her failure to offer such evidence at trial. But in the same sentence the court explained that "claims based on evidence – such evidence are time barred," and then summarized its ruling: "Therefore, in conclusion, the Court finds that summary judgment is appropriate and is mandated to all claims prior to that date." The court's written order followed. It provided that "Plaintiff's claims based on allegedly discriminatory or retaliatory events that occurred prior to September 21, 2003 are untimely, and summary judgment for defendant is granted as to these claims" and made no reference to evidentiary rulings.

Particularly given the context, we find specious Ms. Betz's contention that the court's remark about evidence in the midst of the summary judgment hearing excused her from offering evidence at trial that she now says the court wrongly "excluded." (We reject as well her related assertion that the court's purported prohibition on pre-September 21 evidence was "particularly egregious" because the court relied on events during that time period in its decision.) Summary judgment hearings, of course, are not ordinarily used to make pre-trial evidentiary rulings, and we have seen nothing in the record to indicate that either party requested or expected the court to make such rulings. And Ms. Betz made no reference at trial to the alleged evidentiary ruling. Instead, her conduct during the trial was inconsistent with her present assertion that the court had prohibited her from presenting evidence of pre-September 21 occurrences: She offered and the district court admitted evidence of some matters that occurred during that time period, and the court itself asked her what duties she had performed in 1999. Because the district court simply did not exclude evidence that Ms. Betz did not offer, the court plainly could not have erred. In addition, the material that Ms. Betz contends was wrongly excluded contains little or no evidence that is even related to the question of discriminatory animus.

We therefore conclude that the district court did not err in finding that DHS did not discriminate against Ms. Betz because of her age.

B.

Even if the court had erred in finding that DHS did not engage in age discrimination, Ms. Betz would not have been entitled to relief because she has not established that the court erred in finding that she was not constructively discharged. To make out a case of constructive discharge, Ms. Betz had to show that a reasonable person would have found her working conditions intolerable, and that Mr. Cangemi intended to make her resign or, at a minimum, that her resignation was reasonably foreseeable given the conditions under which she was working. *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 910 (8th Cir. 2003).

"The intolerability of working conditions is judged by an objective standard," and to prevail on a constructive discharge claim, a plaintiff must show that his or her "working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000). To prevail on appeal, Ms. Betz must show that the district court clearly erred in finding that her working conditions were not intolerable. *Cf. Tadlock v. Powell*, 291 F.3d 541, 547 (8th Cir. 2002).

As the DHS observes, Ms. Betz essentially argues that her employment conditions were intolerable because she was overworked and underpaid. Although we can envision circumstances in which an employee must do so much work for so little compensation that the working conditions become intolerable, especially when the conditions are imposed for discriminatory reasons, we do not think that the court clearly erred in finding that Ms. Betz's conditions were not intolerable. We do not believe that the district court was required to find that performing Ms. Betz's duties in return for her GS-7 salary (about $39,000 annually when she resigned) was objectively intolerable.

Not surprisingly, none of the constructive-discharge cases that Ms. Betz cites in her brief is based on inadequate compensation: The plaintiff in *Wright v. Rolette County*, 417 F.3d 879, 886-87 (8th Cir. 2005), *cert. denied*, 546 U.S. 1173 (2006), claimed that she was forced to quit because of a hostile work environment, a frequent basis for constructive discharge claims, *see, e.g., Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875 (8th Cir. 1998); *Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349 (8th Cir 1997). (We concluded in *Wright*, 417 F.3d at 886, that the supervisor's conduct, though "serious and reprehensible," did not as a matter of law create an intolerable work environment.) Ms. Betz cites two other constructive discharge cases, both brought under the ADEA. In the first, we reversed a judgment for the plaintiff because the record evidence could not support a finding that the plaintiff's working conditions were intolerable. *Tatom*, 228 F.3d at 931-32. The plaintiff had quit rather

than accept a 120-day suspension for a safety violation. *Id.* at 930-31. As we observed in *Tatom*, *id.* at 932, we have previously held that "such things as loss of supervisory responsibilities, a feeling of being unfairly criticized, dissatisfaction with work assignments, and loss of pay are insufficient to constitute a constructive discharge."

Although we upheld a verdict for the plaintiff in *Smith v. World Ins. Co.*, 38 F.3d 1456, 1461-62 (8th Cir. 1994), the final case that Ms. Betz cites, that case presented circumstances far different from those before us. We stated in *Smith*, *id.* at 1461, that "an offer of early retirement constitutes a constructive discharge when the choice is [between] early retirement or continuing to work under intolerable conditions, like the threat of termination without benefits," and held that the plaintiff's evidence satisfied this standard. The plaintiff testified that his employer "threatened to 'turn the screws' and 'build a file' against [him] if he did not resign" and made clear that he would not get benefits unless he took early retirement. *Id.* In addition, the individual who convinced the plaintiff to resign had admitted to another witness that he wanted to "get rid of" older employees, including the plaintiff. *Id.* at 1462.

The cases that Ms. Betz relies on are of no assistance to her, and we conclude that the district court did not clearly err in finding that her working conditions were not objectively intolerable.

## II.

In her final point, Ms. Betz contends that the district court erred in concluding that her retaliation claims based on retaliatory events before September 21, 2003, were barred because her EEO charge was untimely. We disagree.

To make out a claim of retaliation, Ms. Betz had to show that she participated in a protected activity, that DHS treated her in a manner that was materially adverse, and that there was a causal relationship between the two. *See Burlington Northern &*

-10-

*Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006); *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 643-44 (8th Cir. 2009); *see also Gomez-Perez v. Potter*, 128 S. Ct. 1931, 1936 (2008). She alleged that Mr. Cangemi retaliated against her because of her 1999 EEO age discrimination charge by refusing to give her annual evaluations, which would have given her an opportunity for additional compensation, and refusing to give her upgrades that would have increased her salary, and that these acts eventually caused her constructive discharge.

A federal employee generally must contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 CFR § 1614.105(a)(1). Ms. Betz first contacted an EEO counselor about the alleged retaliation on November 5, 2003, and the district court granted summary judgment to DHS on claims based on retaliatory events that occurred more than 45 days earlier. Ms. Betz relies, however, on one of several exceptions to the deadline: Under § 1614.105(a)(2), the EEOC or the agency "shall extend the 45-day time limit" if the employee shows that "she was not notified of the time limits and was not otherwise aware of them." Ms. Betz asserted that despite knowing about the deadline for reporting discriminatory acts, she was unaware that she had to report acts of retaliation to an EEO counselor. The district court rejected her assertion: The court observed that Ms. Betz had brought at least one previous EEO charge and thus was well aware of the general requirement for filing a timely EEO charge. The court found that it was therefore likely that Ms. Betz knew that she should contact an EEO counselor if she believed that she was being retaliated against for having filed an EEO charge. We do not believe that the court clearly erred in finding that she was sufficiently familiar with the 45-day time requirement to be bound by it. We also note that Ms. Betz's conduct indicates that she did not distinguish between discrimination and retaliation when filing an EEO charge: In November, 2003, she first contacted an EEO counselor about her contention that she had suffered both discrimination and retaliation for the past three years.

-11-

Ms. Betz also argues that her claim of retaliation was not time-barred because it was based on a continuing violation that did not end until after September 21, 2003. The Supreme Court has held that the continuing violation doctrine applies in hostile work environment claims, where, although one incident may not support a claim, the claim may be supported by a series of incidents that occur over a period of time, *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002), but Ms. Betz did not bring a hostile environment claim. Under the Court's holding in *Morgan*, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. In her brief, Ms. Betz equates the denial of an upgrade with a failure to promote, and we conclude that the pre-September 21 matters that she contends prevented her from obtaining additional compensation are discrete acts that required her to contact an EEO counselor within 45 days of their occurrence. She did not do so and is therefore barred from bringing an action based specifically on those occurrences.

We note that Ms. Betz's EEO charge was timely as to her retaliation-based constructive discharge claim, which the court does not seem to have addressed separately, but we conclude that her working conditions were not intolerable as a matter of law. *See Tatom*, 228 F.3d at 932. Virtually all viable constructive discharge claims involve a hostile work environment, which Ms. Betz does not allege was present here. And even if we assume, without deciding, that she could show that Mr. Cangemi engaged in the retaliatory acts that she alleges and that we can consider those acts in assessing her constructive discharge claim, we do not believe that she could make out a case. Although an employee would certainly not want to work for a supervisor who retaliated against her for a now-moot discrimination charge filed four years ago, we do not believe those circumstances would make the job intolerable. As we have said, DHS paid Ms. Betz about $39,000 annually, and she did not contend

-12-

that the agency or Mr. Cangemi required her to perform duties or to work hours that were in any way inhumane or unacceptable. In fact, she asserted that others did similar work (but were paid more). Ms. Betz has not shown that the district court committed reversible error with respect to any of her retaliation claims.

## III.

The judgment of the district court is affirmed.

_____