# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 09-2004

_____

Amy Elam,

           Appellant,

v.

Regions Financial Corporation;
Regions Financial (DE), Inc.;
Roxanne Rutherford; Carol
Knopic,

           Appellees.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted: January 14, 2010
Filed: April 19, 2010

_____

Before GRUENDER and SHEPHERD, Circuit Judges, and LANGE,[1] District Judge.

_____

GRUENDER, Circuit Judge.

Amy Elam brought claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the Pregnancy Discrimination Act (PDA), 42

_____

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota, sitting by designation.

U.S.C. § 2000e(k), and the Iowa Civil Rights Act of 1965 (ICRA), Iowa Code § 216.1 *et seq.*, alleging that her employer, Regions Financial Corporation, and her supervisors, Roxanne Rutherford and Carol Knopic, discriminated against her because of her pregnancy. The district court[2] granted summary judgment in favor of the defendants on all claims. For the following reasons, we affirm.

## I.     BACKGROUND

Because we are reviewing a grant of summary judgment, we describe the facts in the light most favorable to Elam. Regions hired Elam as a senior bank teller in its West Des Moines, Iowa branch. She began work at the branch on July 16, 2005. From the start, she experienced frequent vomiting at work between approximately 8:00 and 10:30 a.m., causing her to abandon her teller station four to eleven times each morning to rush to the restroom. Rutherford, Elam's immediate supervisor, suggested that she see a doctor about her illness. Elam learned that she was pregnant and experiencing morning sickness. She informed Rutherford of her pregnancy.

Rutherford contacted Gloria Larkin, a member of Regions's human resources department, and asked how to accommodate Elam's condition. Larkin suggested that Elam could come to work late "for a couple of weeks," noting that as long as Elam continued to work thirty hours per week she would be eligible for full-time benefits. Larkin also advised Rutherford to try to implement any accommodations Elam's doctor recommended. Elam's doctor recommended that Elam be allowed to keep a beverage at her teller station and be excused from work as necessary to deal with her sickness. Regions allowed Elam to keep a beverage at her station. Regions also offered Elam the opportunity to come to work each day after her morning sickness subsided, which Elam rejected.

---

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

On July 25, Regions sent Elam to its Indianola, Iowa branch for teller training. After completing the training, Elam returned to the West Des Moines branch where her morning sickness continued. On one occasion, Elam abandoned her teller station in the middle of a transaction with a customer. Whenever Elam left her station, other tellers had to stop performing their own work in order to cover Elam's station.

Regions experienced additional problems with Elam's job performance. Elam failed to secure the cash drawer at her teller station, which she attributes to leaving her station suddenly because of morning sickness. She also left unattended cash on the counter of her station, laid her head on the counter at her station, used her cell phone at her station, and failed to properly document customer transactions. Regions received complaints from other tellers about covering for Elam when she left her station. The tellers also reported that they were frustrated with Elam because she regularly needed help processing transactions.

On August 18, Knopic, the branch sales manager, met with Elam to discuss Elam's failing to lock her cash drawer when she was not at her station, leaving cash unattended on the counter of her station, and using her cell phone at work. Knopic gave Elam a memorandum of understanding, which indicated that Elam must immediately stop this behavior and that "further disciplinary action up to and including termination" could result if it continued. On August 23, Knopic met with Elam again to discuss her inability to "fulfill her job requirements" due to her frequent absences from her teller station. Knopic reiterated that Elam could report for work later in the morning after her sickness subsided. Knopic also requested that Elam ask her doctor if there were any other accommodations that could be made to avoid the frequent work interruptions, but Elam did not provide any additional recommendations. Knopic gave Elam a written warning, which indicated that Elam could be terminated if the issues were not resolved.

On September 14, Elam was late for a mandatory training meeting. On September 15, Knopic e-mailed Richard Tyler, a member of Regions's human resources department, to ask "if anything can be done to let [Elam] go." Referring to Elam as the "(pregnant girl) teller that I am having problems with," Knopic informed Tyler of Elam's frequent absences from her teller station due to her sickness, inappropriate activities at work, and poor work performance. Knopic stated that other tellers were frustrated with Elam's performance and that Knopic did not want to lose them. Tyler suggested that Knopic prepare a disciplinary action form listing every instance of substandard behavior and performance. However, he made it clear that he would not approve the termination of Elam's employment without reviewing the form to ensure that the "justification for termination will hold up due to the fact that [Elam] is pregnant." After receiving Tyler's approval, Knopic terminated Elam's employment on September 16.

Elam filed suit against Regions, Rutherford, and Knopic, alleging that they discriminated against her because of her pregnancy. The defendants filed a motion for summary judgment, which the district court granted. Elam filed a motion to alter or amend the judgment, which the district court denied. Elam appeals.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo, viewing the evidence and the reasonable inferences that may be drawn from the evidence in the light most favorable to Elam. *See Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005). However, these inferences must be "reasonable inferences—those that can be drawn from the evidence without resort to speculation." *P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 658 (8th Cir. 2001) (quoting *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir. 2001)). Furthermore, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Id.* (alteration in original) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Bass v. SBC Commc'ns. Inc.*, 418 F.3d 870, 873 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).

Elam's case may survive the defendants' motion for summary judgment on her pregnancy discrimination claims in one of two ways.[3] *See McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009). First, Elam may produce direct evidence of discrimination. *See id.* Alternatively, she may avoid summary judgment by "creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *See McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007) (citing *Russell v. City of Kansas City*, 414 F.3d 863, 866-67 (8th Cir. 2005)). Elam purports to have demonstrated both direct evidence of pregnancy discrimination and an inference of unlawful discrimination based on her pregnancy under *McDonnell Douglas.*

Direct evidence of discrimination is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *McCullough*, 559 F.3d at 860 (quoting *Russell*, 414 F.3d at 866). Direct evidence is distinguished from "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000) (quoting *Fast v. S. Union Co.*, 149 F.3d 885, 890 (8th Cir. 1998)). Elam claims that Rutherford's reference to her as "pregnant," Knopic's reference to

---

[3]Elam's Title VII sex discrimination claim is based solely on alleged discrimination because of her pregnancy. Because Elam presents no separate arguments under ICRA, we address her ICRA claims together with her Title VII claims. *See Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003).

her as the "(pregnant girl) teller," Regions's proposal to allow her to report to work later each morning, and the August 23 written warning reprimanding her for being unable to perform her job duties all provide direct evidence of discrimination. We disagree.

Rutherford described Elam as pregnant when she sought guidance from Larkin on how to accommodate Elam's morning sickness. Reference to protected status "without reflecting bias is not direct evidence of discrimination." *Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 810 (8th Cir. 2007) (citing *Deneen v. Nw. Airlines, Inc.*, 132 F.3d 431, 436 (8th Cir. 1998)). Rutherford's use of the word "pregnant" did not reflect any bias against Elam; rather, it merely communicated Elam's condition to Larkin in an effort to determine how to accommodate Elam. Similarly, Knopic's reference to Elam as the "(pregnant girl) teller" in her e-mail to Tyler did not reflect any bias against Elam based on her pregnancy. The remark did not indicate a negative attitude toward Elam's pregnancy. *See id.* Moreover, concern over the rights of a protected employee "should be regarded as a natural reaction to the ever-present threat of litigation attendant upon terminating [a protected] employee," not evidence of discrimination. *See Bashara v. Black Hills Corp.*, 26 F.3d 820, 824 (8th Cir. 1994). Elam argues that Knopic's reference to her as the "(pregnant girl) teller" shows that she was displeased with Elam's pregnancy, not her performance. However, Elam points to no evidence to support her conclusion. We will not resort to speculation in order to make such a remote inference. *See P.H.*, 265 F.3d at 658.

Elam's claim that Regions's proposal to allow her to report to work later each morning provides direct evidence of pregnancy discrimination also fails. Elam argues that Regions's accommodating offer was actually an attempt to force her to work less than thirty hours per week in order to deny her benefits associated with full-time employment. However, even viewed in the light most favorable to Elam, Regions's offer does not reflect a discriminatory animus toward Elam based on her pregnancy. Regions did not forcibly cut Elam's hours. Rather, Regions suggested that she could

-6-

report to work each morning after her sickness subsided. Regions never recommended that she work less than the thirty hours per week required to maintain her benefits. Moreover, Elam provides no link between Regions's offer and the ultimate decision to dismiss her, which she claims was based on pregnancy discrimination. *See McCullough*, 559 F.3d at 860. Regions's offer does not constitute direct evidence of discrimination.

The August 23 written warning also does not contain direct evidence of discrimination. The written warning reprimanded Elam for being unable to perform her job duties because of her frequent absences from her teller station. Title VII, as amended by the PDA, provides that pregnant women must "be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Deneen*, 132 F.3d at 435 (quoting 42 U.S.C. § 2000e(k)). "The PDA 'does not create substantive rights to preferential treatment.'" *Id.* at 436 (quoting *Lang v. Star Herald*, 107 F.3d 1308, 1312 (8th Cir. 1997)). "On the contrary, the PDA allows 'employers [to] treat pregnant women as badly as they treat similarly affected but nonpregnant employees.'" *Id.* at 436-37 (alteration in original) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir. 1994)). Regions was not required to overlook Elam's frequent absences from work, even if the absences were caused by her pregnancy, unless it overlooked the frequent absences of other employees. *See id.* at 437 (citing *Troupe*, 20 F.3d at 738). Elam presented no evidence that nonpregnant employees were allowed to leave their work stations abruptly at frequent intervals every morning. Instead, Elam erroneously suggests that Regions's refusal to give her special treatment was direct evidence of discrimination.

Because Elam did not present direct evidence of pregnancy discrimination, we analyze her claims under the *McDonnell Douglas* burden-shifting framework. Under *McDonnell Douglas*, the plaintiff must establish a prima facie case of discrimination. *Rodgers*, 417 F.3d at 850. To establish a prima facie case, the plaintiff "must show that: (1) she is a member of a protected group; (2) she was qualified for her position;

(3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination." *Id.* Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a "non-discriminatory, legitimate justification for its conduct, which rebuts the employee's prima facie case." *Id.* (quoting *Sprenger*, 253 F.3d at 1111). If the employer meets its burden, the plaintiff must "produce evidence sufficient to create a genuine issue of material fact regarding whether [the employer's] proffered nondiscriminatory reason is a pretext for discrimination." *Id.* at 853.

Assuming, without deciding, that Elam presented a prima facie case,[4] Regions has provided a lengthy list of nondiscriminatory, legitimate reasons for terminating Elam's employment. Regions's proffered reasons include Elam's frequent absences

---

[4]The district court found that Elam could not establish a prima facie case of discrimination because she did not show that she was qualified for the senior teller position. The parties suggest that the question whether Elam was qualified for the position depends on whether she met Regions's legitimate expectations. *See Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir. 2005) (describing the qualified element as "meeting the legitimate expectations of her employer"). In this case, the relevant expectations happen to coincide with the reasons Regions gave for terminating Elam's employment. We note, however, that there appears to be a tension in our circuit's jurisprudence regarding whether a court may consider an employer's reasons for discharging an employee when considering the qualified element of the prima facie case. *Compare Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010) ("Lake establishes his prima facie case if, setting aside Yellow's reason for firing him, he was *otherwise* meeting expectations or *otherwise* qualified." (citing *Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008))), *with Zhuang*, 414 F.3d at 855 (considering the reasons the employer gave for firing the employee when evaluating the qualified element of the prima facie case), *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000) (same), *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445-46 (8th Cir. 1998) (same), and *Moyer v. DVA Renal Healthcare, Inc.*, No. 09-1660, 2010 WL 1190702, at *2 (8th Cir. Mar. 30, 2010) (unpublished) (same). Because we assume that Elam has established the prima facie case, we need not address this issue.

from her teller station, leaving her cash drawer unlocked and cash unattended, using her cell phone at work, laying her head down at her station, arriving late to a training meeting, and difficulty documenting transactions. Accordingly, the burden ultimately rests on Elam to show "a genuine issue for trial about whether the employer acted based on an intent to discriminate rather than on a good-faith belief that the employee committed misconduct justifying termination." *See McCullough*, 559 F.3d at 862 (citing *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005)).

Elam claims that she has shown pretext through her evidence of: (1) Knopic and Rutherford's reference to her protected status, (2) "genuine issues of fact concerning the extent of [Elam's] alleged misconduct," (3) disparate treatment of her and other employees, and (4) Regions's shifting reasons for discharging her. We affirm the district court's grant of summary judgment to Regions because Elam failed to raise a triable question of material fact as to whether Regions's reasons for terminating her employment were pretext for discrimination.

Elam has not presented sufficient evidence to allow a reasonable jury to conclude that Knopic or Rutherford's reference to Elam's protected status showed an intent to discriminate against Elam. Knopic and Rutherford's remarks simply identify Elam's condition while seeking advice from Regions's human resources department. The mere reference to her protected status does not reflect any intent to discriminate. Again, such an inference would be pure speculation, which is insufficient to avoid summary judgment. *See P.H.*, 265 F.3d at 658.

Elam argues that there are genuine issues of fact concerning some instances of her alleged misconduct. In reciting the facts in the light most favorable to Elam, we have already eliminated any alleged misconduct for which she has presented contrary evidence. Still, Elam does not dispute that she left her teller station four to eleven times every morning, left her cash drawer unlocked and cash unattended, used her cell phone during working hours, laid her head down at her station, arrived late to a

training meeting, and had problems documenting customer transactions. We do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Rodgers*, 417 F.3d at 854 (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)). "[O]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *P.H.*, 265 F.3d at 658 (quoting *Anderson*, 477 U.S. at 248). Because Elam admits to numerous acts of misconduct that provide a "good-faith" basis for her discharge and she does not argue that any of the challenged alleged misconduct shows an intent to discriminate, *see McCullough*, 559 F.3d at 861-62, any disputes over other instances of alleged misconduct are insufficient to create a genuine question of fact on pretext.

Elam also attempts to prove pretext by demonstrating that Regions treated her less favorably than other similarly situated employees outside of her protected class. She claims that Amber Showers, a teller, left her teller keys on the counter and left money unattended. She also claims that Showers and another teller, Matt Bean, used their cell phones at work. But she failed to show that she was "similarly situated in all relevant respects" to Showers or Bean. *See Rodgers*, 417 F.3d at 853 (citing *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004)). To be probative of pretext, the alleged misconduct of other employees must be of "comparable seriousness." *Id.* (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972-73 (8th Cir. 1994)). Although Showers and Bean allegedly committed two of the same acts as Elam, Elam's record of numerous other acts of misconduct—abandoning her work station frequently, laying her head down at her station, arriving late to a training meeting, and having problems documenting customer transactions—sets her apart. *See Tolen v. Ashcroft*, 377 F.3d 879, 883 (8th Cir. 2004) ("[T]he frequency of Tolen's misconduct distinguishes him from his offered comparables."); *see also Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 561 (8th Cir. 1997). Moreover, Elam did not present any evidence that Regions supervisors were aware of the alleged

misconduct of Showers or Bean. *See Hervey v. County of Koochiching*, 527 F.3d 711, 720 (8th Cir. 2008) ("[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)), *cert. denied*, 555 U.S. ---, 129 S. Ct. 1003 (2009); *see also Clearwater*, 231 F.3d at 1127. Because Elam has not shown that she was "similarly situated in all relevant respects" to Showers or Bean, she has failed to raise a triable question of fact as to pretext.

Finally, Elam claims that the reasons Regions gave for discharging her shifted over time. She notes that Knopic's e-mail to Tyler documented Elam's absence from her station, inappropriate work activities, and poor work performance. In response, Tyler suggested that if it was determined that Knopic's stated grounds were sufficient to justify discharging Elam, Knopic should tell Elam that it "was a mishire situation and that she was not a match for the job." While "'[s]ubstantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext,' this does not mean that an employer cannot elaborate on its proffered reason." *Rodgers*, 417 F.3d at 855 (citation omitted) (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 835 (8th Cir. 2002)). In providing further detail of her reasons for discharging Elam, Knopic merely elaborated on why this was a "mishire situation" and Elam was "not a match for the job." Furthermore, these reasons are consistent with Elam's poor performance as detailed in the memorandum of understanding and written warning, which Knopic provided to Elam.

## III. CONCLUSION

We conclude that Elam failed to demonstrate direct evidence of discrimination. Even assuming that Elam established a prima facie case of discrimination, she failed to present sufficient evidence to show that Regions's reasons for terminating her

employment were pretext for discrimination.  As a result, we affirm the judgment of the district court.

_____