# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 15-3107

———————————————————

Sharilyn Haggenmiller

*Plaintiff - Appellant*

v.

ABM Parking Services, Inc.

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: May 17, 2016
Filed: September 14, 2016

——————————

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

——————————

RILEY, Chief Judge.

Sixty-three-year-old Sharilyn Haggenmiller was terminated from her job at ABM Parking Services, Inc. (ABM), a parking facility management company that operates parking facilities in the Minneapolis-St. Paul International Airport (MSP airport). Haggenmiller sued her former employer in Minnesota state court, alleging she was unlawfully terminated based on age in violation of the Minnesota Human Rights Act, see Minn. Stat. § 363A.08. ABM removed the action, and the district

court[1] granted summary judgment to ABM. Haggenmiller appeals. Having appellate jurisdiction, see 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND
### A.    Facts

ABM operates parking garages throughout the country. On July 1, 2004, ABM entered into the Parking Enterprise Operation Management Services Agreement (agreement) with the Metropolitan Airports Commission (MAC), a Minnesota public corporation that owns, operates, and maintains the MSP airport. Under the agreement, ABM operated the MSP airport parking facilities, and MAC reimbursed ABM for "authorized expenses," including ABM employee salaries and benefits. Pursuant to the agreement, the ABM general manager at the MSP airport was "assigned only to and work[ed] exclusively for the MAC at this location" and was to report directly to MAC.

Sharilyn Haggenmiller began working as a human resources administrative assistant for the MSP airport facility operated by ABM in August of 2004. The approximately ten to twelve ABM office employees at the MSP airport worked in a two-story office building near the entrance of general parking in terminal one and supported the nearly 100 individuals working in parking operations. After a couple years, Haggenmiller started working with the auditing department. Though she kept many of her administrative responsibilities, according to Haggenmiller, her primary responsibility was auditing. Each week, the auditors received crates full of parking tickets that had been removed from cashiers' boxes in the parking facilities. Haggenmiller's job was to manually check the parking tickets against the cashiers' reports and balance the daily total. Haggenmiller then created a report by manually entering the information into a computer program called Citrix. Haggenmiller's other

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

duties involved billing and administrative tasks—including sending bad checks to collections, answering the phone, communicating with customers about refunds, and maintaining the company bulletin board.[2]

During Haggenmiller's time at ABM, new technology and automation eliminated some of her duties. For instance, ABM began (1) using a computer program that automatically populated reports Haggenmiller formerly entered manually; (2) accepting credit cards at entrance and exit ramps; and (3) operating a cash-counting machine, eliminating the need for auditors to count the cash by hand.

Haggenmiller received positive performance reviews for her work. On her December 2012 performance evaluation, she received "Excellent" rankings in the categories of dependability, communication, and working with others, and a "Good" ranking in job knowledge and skill, quality of work, and work quantity. Delana Gerten, Haggenmiller's supervisor, described her as "helpful, cooperative, reliable and courteous." Gerten wrote, "Our Audit team can count on her, with a smile, to help in any task asked of her." In September 2011, Haggenmiller listed "work until retirement" as a short-range goal on her performance review, though she testified she did not remember doing so.

By June 2012, the last renewal term to the agreement between ABM and MAC had expired, and they were operating on a month-to-month basis. MAC hired Lumin

---

[2]According to Greg Frankhauser, ABM's general manager at the MSP airport, Haggenmiller's primary responsibility was not auditing, but the data entry that came afterward once the auditors had given her the paperwork. Frankhauser stated Haggenmiller "did all kinds of miscellaneous [sic], whatever tasks came up." Haggenmiller insists she was an auditor, and says her termination review form which listed her job title as "Administrative Assistant" was "[w]rongly titled."

Advisors (Lumin), an independent auditing and consulting firm, to perform an audit of MAC's "landside operations," which included the MSP airport parking facilities.

In the fall of 2012, ABM's general manager left the company, and Greg Frankhauser, who at the time was the general manager of ABM in the St. Louis airport, became interim general manager at the MSP airport. In February 2013, Frankhauser officially became the general manager. Frankhauser knew Haggenmiller from when he worked at the MSP airport as ABM's assistant general manager from 2008 through 2011. Frankhauser testified that as general manager he had no part in Lumin's audit, other than being interviewed about his own job duties.

Lumin created an executive summary of the audit results, dated February 27, 2013, to present to the MAC finance group. Lumin made several recommendations to help MAC "benefit from [new] technology," including changes to personnel. One of Lumin's recommendations was to eliminate the "Administrative Assistant/Auditor position"—Haggenmiller's position—because new automation systems replaced the need to manually enter the audit reporting information. Lumin also found the "new payroll system" eliminated the need for the "ABM Payroll and Purchasing position," then occupied by the oldest ABM employee at the MSP airport, 64-year-old Monica Martinson. Lumin additionally suggested hiring two roving shift managers, one for first shift and one for second, to better address operational and customer needs on the parking ramps and throughout the terminals. Lumin recommended having the shift managers, instead of auditors, take over the daily cash counts to "reduce[] the number of people involved in cash handling and free[] up the Auditors to audit."

The final Lumin audit report was presented to the MAC finance group in early April 2013. Sometime afterward, Rick Decker, MAC Assistant Manager of Parking, and Arlie Johnson, Assistant Airport Director of Landside Operations—the MAC officials to whom Frankhauser reported—brought Frankhauser into Johnson's office

to discuss Lumin's audit, the implementation of Lumin's recommended changes, and, specifically, the elimination of the payroll and administrative assistant/auditor positions. Frankhauser testified he "had no choice" but to accept the changes MAC requested. In total, Lumin made 96 recommendations to MAC, and MAC implemented them all.

A few days later, Frankhauser asked Decker if MAC was "firm" on eliminating those positions, and Decker responded that they were and "wanted to make sure [Frankhauser] enacted all of those changes." At the time MAC made the recommendation, they were unaware of which ABM employees were in the positions. When Frankhauser called Decker back to tell him who was in the positions, he asked to "confirm [if] there [was] any flux on this" and was told, "no." Frankhauser then requested written documentation so he could process approval of Haggenmiller's termination through ABM's regional offices. Frankhauser also told Decker at some point he would check to see "if there was anything else for [Haggenmiller and Martinson], if we had something open." Decker said that would be fine, as long as Frankhauser did not create new positions.

On April 12, 2013, Decker sent Frankhauser an email requesting that he eliminate the audit administrative assistant and accounting clerk, begin searching for two new shift managers "as soon as possible," and look for a third to begin in August of that year. Frankhauser testified he began to look for open positions for Haggenmiller and Martinson beginning in May. He said he looked for "something along the lines of office work, something that they had been accustomed to," including cashier and control room operator positions, but at the time, there was nothing open.

Frankhauser submitted a Termination Review Form for the elimination of Haggenmiller's position to ABM's regional human-resources office in Cleveland, Ohio, which was approved on May 30, 2013, effective May 31. Under the section

Explain Reason for Termination, the form stated, in part, "As a result of [the Lumin audit] we have been instructed by the MAC to eliminate two positions that Lumin Advisors felt had no impact on the parking operation," and that the office was "following the request of the MAC and Landside Operations in the elimination of these two positions." The form stated Haggenmiller's current duties were the "ones that no one will specifically absorb," including "[m]ail distribution, setting out of the daily tickets, SR entry, and other tasks [that] are currently ones in which [sic] different people do now depending on who recognizes that it needs to be done."

On June 3, 2013, Frankhauser and Beth Sandeberg, a human resources manager for ABM, met with Haggenmiller in Frankhauser's office. They explained her job was being eliminated due to Lumin's audit and recommendations. Describing this meeting, Haggenmiller testified she was told she "was terminated for business reasons. I didn't really understand. I was pretty upset." She also said Frankhauser told her there would be "a lot more [layoffs] in your auditing department and throughout the company so you're not the only one." Shortly after, one of the new shift managers started.[3] The new shift manager was more than 30 years younger than Haggenmiller.

Frankhauser and Sandeberg terminated Martinson the next day. Of all the ABM office employees who were working at the MSP airport at the time, Haggenmiller and Martinson were the two oldest. On July 15, 2013, Sandeberg sent Haggenmiller an email about a job opening for a cash specialist supervisor position at the ABM location in downtown Minneapolis, but Haggenmiller testified she did not apply because she could not meet the job's lifting requirement. In addition, the deadline for submitting applications for this position had expired.

---

[3]Due to budget constraints, ABM's search for additional shift managers was put off until 2014.

-6-

### B. Procedural History

In March 2014, Haggenmiller filed a claim against ABM in the Hennepin County District Court. Haggenmiller alleged she was terminated based on age in violation of the Minnesota Human Rights Act.[4] See Minn. Stat. § 363A.08. ABM removed the action to federal court. See 28 U.S.C. §§ 1332(a), 1441(b), and 1446. ABM subsequently moved for summary judgment. See Fed. R. Civ. P. 56. The district court granted summary judgment to ABM, and Haggenmiller timely appeals.

## II. DISCUSSION

"We review de novo a district court's grant of summary judgment." Reynolds v. RehabCare Grp. E., Inc., 591 F.3d 1030, 1032 (8th Cir. 2010). The grant of summary judgment is appropriate when, viewing the record "in the light most favorable to the to the non-moving party," id. (citation omitted), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). While "'the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012) (quoting Wingate v. Gage Cty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008)).

The parties agree we analyze discrimination claims under the Minnesota Human Rights Act under the same framework as claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34. See Ramlet v. E.F. Johnson Co.,

---

[4]Haggenmiller also alleged (a) ABM retaliated against her for filing a claim for workers' compensation benefits in violation of Minn. Stat. § 176.82; and (b) ABM terminated her because of her disability, see Minn. Stat. § 363A.08. The district court dismissed these claims in its summary judgment order, and Haggenmiller did not appeal their dismissal.

507 F.3d 1149, 1152 (8th Cir. 2007). "An age discrimination plaintiff may survive the defendant's motion for summary judgment either by setting out direct evidence of discrimination or by creating an inference of discrimination under the McDonnell Douglas Corp. v. Green burden-shifting framework." Id. (citation omitted); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Dietrich v. Canadian Pac. Ltd., 536 N.W.2d 319, 324 (Minn. 1995). Without direct evidence of age discrimination, Haggenmiller must establish a prima facie case by demonstrating "'(1) she is a member of a protected group; (2) she was qualified for her position; (3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination.'" Doucette v. Morrison County, 763 F.3d 978, 982 (8th Cir. 2014) (quoting Elam v. Regions Fin. Corp., 601 F.3d 873, 879 (8th Cir. 2010)).[5]

ABM then has the opportunity to "'articulate a non-discriminatory, legitimate justification for its conduct, which rebuts [Haggenmiller's] prima facie case.'" Doucette, 763 F.3d at 982 (quoting Elam, 601 F.3d at 879). "If [ABM] articulates such a reason, the burden returns to [Haggenmiller] to show [ABM's] proffered reason is pretextual." McGinnis v. Union Pac. R.R., 496 F.3d 868, 873 (8th Cir. 2007). Under the Minnesota Human Rights Act, "'even if an employer has a legitimate reason for the [employment decision], a plaintiff may nevertheless prevail if an illegitimate reason more likely than not motivated the decision.'" LaPoint v. Family Orthodontics, P.A., 872 N.W.2d 889, 892-93 (Minn. Ct. App. 2015) (alterations in original) (omitting internal citation) (quoting McGrath v. TCF Bank Sav., 509 N.W.2d 365, 366 (Minn. 1993)); cf. 29 U.S.C. § 623(a)(1) (federal age discrimination).

---

[5]This standard applies to reduction-in-force (RIF) claims, where, as the district court stated, "'business considerations cause an employer to eliminate one or more positions within the company,'" quoting Dietrich, 536 N.W.2d at 324.

The district court decided it "need not consider Haggenmiller's prima facie case, because, even assuming she satisfies it," ABM proffered a legitimate reason for her termination based on Lumin's study and MAC's instructions to ABM. The district court rejected Haggenmiller's attempts to show ABM's reason was pretextual, concluding "no reasonable jury could conclude" ABM's "real motivation was age discrimination."

On appeal, Haggenmiller argues the district court applied the wrong standard to her claim by treating it as a failure to transfer claim, which she concedes she did not plead. Cf., e.g., Doerhoff v. McDonnell Douglas Corp., 171 F.3d 1177, 1180-81 (8th Cir. 1999) ("Although Doerhoff did not bring a failure to transfer claim . . . we note that this does not prevent him from attempting to use MDC's failure to transfer him as evidence that the RIF was a pretext for age discrimination."). Haggenmiller also contends the district court disregarded evidence that sufficiently created an inference of age discrimination on the part of ABM.

Haggenmiller does not challenge ABM's proffered reason for her termination—that MAC directed Frankhauser to eliminate her position due to Lumin's audit. Rather, she argues ABM was not required to terminate *her*, just eliminate her position. Haggenmiller claims that one of the reasons ABM used to justify her termination was that there were no other open positions throughout the ABM enterprise, which she argues was false and demonstrates pretext. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."); Betz v. Chertoff, 578 F.3d 929, 933 (8th Cir. 2009) ("We agree that an employer's false explanation may support—though it does not require—an inference of discrimination."); Loeb v. Best Buy Co., 537 F.3d 867, 873 (8th Cir. 2008) ("The falsity of a nondiscriminatory basis for the employment action may also support a

finding of pretext."). ABM contends Haggenmiller "was clearly terminated solely because of the audit, and incidentally, there were no positions for her to work in ABM's MSP office at the time her position was eliminated."

Although Frankhauser was under no obligation to find alternative employment for Haggenmiller, cf. Doerhoff, 171 F.3d at 1180 n.5, he asked Decker if he could look for open positions for Haggenmiller and, after having received the direct order to eliminate Haggenmiller's position, went back to make sure MAC was "firm" on its decision to eliminate her position. Frankhauser then looked for all "potentially open" jobs, including ABM positions in the MSP airport, other ABM facilities, and part-time jobs. Frankhauser went so far as to continue to look for jobs for Haggenmiller after her termination.[6] When asked why he would look for open jobs for Haggenmiller and Martinson, Frankhauser explained there was "no reason not to have folks around that, you know, that have the ability to do what they're doing," but ABM "didn't have anything" open. Haggenmiller testified that during her termination meeting, she was told there were no jobs available. Haggenmiller also points out that in the section "Explain Reason for Termination," Martinson's termination review form—but not hers—stated, "A search both in parking and within the ABM enterprise and [sic] found no other available positions for which they [sic]."

---

[6]Once Frankhauser learned Haggenmiller hired an attorney, Frankhauser testified his job search for her came "to a screeching halt." Haggenmiller likens his reaction to Smith v. URS Corp., 803 F.3d 964, 971 (8th Cir. 2015), where we stated a manager's "seemingly defensive reaction" to allegations of discrimination could support a jury's finding of the defendant's "desire to hide an impermissible motive." However, in Smith, this was only part of the evidence the plaintiff presented which we found, when taken together, sufficient to support an inference of racial discrimination. See id. at 970-72. Furthermore, in Smith, the manager in question had falsely denied his involvement in an employee-ranking process, and the defendant never contested that allegation. Id. at 971-72.

Haggenmiller alleges there were jobs open within the ABM enterprise in the area, including an entry-level human resources administrative position at another ABM location. ABM admits there were possibly jobs open in the downtown ABM location and a janitorial position and some part-time union positions, which require seniority preferences, at the MSP airport, but maintains the availability of open positions was never provided as one of the reasons for Haggenmiller's termination. When asked about the entry-level position, Frankhauser testified he did not pass it on to Haggenmiller and Martinson because he "would never have sent two people [Haggenmiller and Martinson] for one job. That's not right."

Haggenmiller claims Frankhauser's failure to consider her for one of the shift manager positions Lumin recommended creating "provides persuasive evidence that ABM was not looking for open positions as it claimed to be." Though a new shift manager started around the same time Haggenmiller was terminated, Frankhauser said ABM had begun the process of interviewing for those positions in March, and Frankhauser "did not consider [Haggenmiller and Martinson] for that because [ABM] had started the [interviewing] process." Haggenmiller disputes the timeline, arguing Frankhauser could not have had approval to begin the search for new shift managers until he received Decker's email on April 12. According to Frankhauser, however, he did not begin looking for open positions for Haggenmiller and Martinson until early May. Haggenmiller argues a jury would find Frankhauser's reasons for not considering her for the shift manager position "deficient" and "simply not true." To defeat summary judgment, Haggenmiller "'must present affirmative evidence,' not simply contend that a jury might disbelieve [ABM's] evidence." Walton v. McDonnell Douglas Corp., 167 F.3d 423, 428 (8th Cir. 1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)); cf. Reeves, 530 U.S. at 148 ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was

-11-

untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

Applying the summary judgment standard, even if Haggenmiller has at least created a weak issue of material fact as to whether there were open jobs at the time she was terminated, she nonetheless readily concedes the alleged lack of other available positions at ABM cannot reasonably be considered ABM's *sole* justification for her termination. Haggenmiller admitted she was told she was being fired "for business reasons," and that reasoning was clearly indicated on her termination review form. Ultimately, the record does not support, and we think it unreasonable to surmise, that ABM insinuated the lack of other available positions was in part why Haggenmiller was terminated. Cf. Reeves, 530 U.S. at 148 (citing Furnco Const. Corp. v. Waters, 438 U.S. 567, 577 (1978) ("[W]hen *all* legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration." (emphasis added))); Taylor v. QHG of Springdale, Inc., 218 F.3d 898, 900-01 (8th Cir. 2000) (reasoning only where the claimant has "produced sufficient evidence to reject the [employer's] legitimate explanation" would "additional independent evidence of discrimination" be unnecessary to "defeat summary judgment"); see also Doerhoff, 171 F.3d at 1181.

Haggenmiller maintains she presented sufficient evidence to support an inference of age discrimination. To show ABM's age bias, Haggenmiller offered two age-related statements she argues the district court ignored. First, during her deposition, Sandeberg admitted that it had "cross[ed] [her] mind" that by terminating Haggenmiller and Martinson, ABM was terminating its two oldest employees at the MSP airport. We agree with the district court's conclusion that Sandeberg's statement was not indicative of age discrimination. See Bashara v. Black Hills Corp., 26 F.3d 820, 824 (8th Cir. 1994) (explaining such "concern . . . should be regarded as a natural

-12-

reaction to the ever-present threat of litigation attendant upon terminating an age-protected employee").

Second, Haggenmiller wants us to consider a statement Frankhauser made to Martinson that the district court apparently failed to address. According to Martinson, in early 2013, she asked Frankhauser why some of her job responsibilities were being taken away, and Frankhauser told her she would "never have to worry about [her] job," but later told her she should consider retirement, during the time period when he was allegedly looking for other jobs for Haggenmiller and Martinson.[7] Haggenmiller testified she knew about the statements, but was not present during either conversation and could not recall whether Frankhauser had ever made comments to any ABM employee in the MSP airport about retirement. Reasonable inquires into retirement are "not inherently discriminatory," Doucette, 763 F.3d at 986, and we are unpersuaded that this remark demonstrates Frankhauser harbored age-related bias. See also Betz, 578 F.3d at 933-34; Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 497 (8th Cir. 1998) (recognizing employers may make "reasonable" inquiries about employees' retirement plans so long as they are not "unnecessary and excessive . . . [so] as to constitute evidence of discriminatory harassment"). But cf. Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 923 (8th Cir. 2000) (recognizing some "[s]tray remarks" relating to age may be relevant circumstantial evidence of age discrimination).

Haggenmiller argues the district court misapplied the summary judgment standard by not making inferences in her favor. Specifically, she takes issue with the

---

[7]Martinson filed her own claim for age discrimination against ABM that survived summary judgment. See Martinson v. ABM Parking Servs., Inc., No. 14-CV-0870, 2015 WL 4771574, at *2 (D. Minn. Aug. 13, 2015). Haggenmiller submitted excerpts from Martinson's deposition as one of her exhibits to her memorandum in opposition to summary judgment.

district court's opinion that Haggenmiller's positive performance reviews "suggested ABM *regretted* firing her and only did so because of the Lumin study"; instead, Haggenmiller suggests her performance reviews support her theory that ABM's decision to eliminate her was not "automatic, inevitable, or immediate." While Frankhauser's testimony may support either finding, it is imperative at this stage that the district court make all reasonable inferences in Haggenmiller's favor and not weigh the evidence. See, e.g., Reeves, 530 U.S. at 150. At the same time, we disagree with the notion that even though Haggenmiller's position was eliminated, losing her job in the wake of the Lumin audit was *not* inevitable. And ABM was not obligated to find an open position for her.

Haggenmiller also asserts the district court erred by not considering the significance of the fact that she and Martinson were the oldest ABM employees at the MSP airport and were both terminated. Haggenmiller points to the district court's statement that "nearly *everybody* was around the same age as Haggenmiller," because nine of the ten ABM employees in the MSP airport were over 40, and eight were over 50 years old. Neither of these facts alone supports a conclusion one way or another that ABM discriminated on the basis of age, and we are unconvinced the district court considered the ages of everyone in the office as conclusive proof that ABM did not discriminate. See Reeves, 530 U.S. at 153.

Finally, for the first time, Haggenmiller alleges ABM failed to disclose "the role it played in the selection of Haggenmiller and Martinson's positions for elimination" and falsely "insisted that it had no influence or impact on Lumin's recommendation to eliminate Haggenmiller's position." Because Haggenmiller did not present this argument before the district court, we do not consider it here. See Eagle Tech. v. Expander Americas, Inc., 783 F.3d 1131, 1138 (8th Cir. 2015).

## III.  CONCLUSION

Viewing the evidence in the light most favorable to Haggenmiller, the district court did not err in granting summary judgment to ABM.  Haggenmiller did not meet her burden of establishing a genuine issue of material fact that ABM's proffered legitimate reason for her termination was pretext for age discrimination.  See Dietrich, 536 N.W.2d at 325-26.  We affirm.

_____