# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 13-2424

———————————————

Mary Doucette

*Plaintiff - Appellant*

v.

Morrison County, Minnesota

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: March 12, 2014
Filed: August 15, 2014

——————————

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge.

Mary Doucette brought suit in Minnesota state court, alleging that her discharge by Morrison County constituted discrimination based on her sex and her age, in violation of the Minnesota Human Rights Act (MHRA), and that it was in reprisal for filing a discrimination complaint under the MHRA. She also claimed the County retaliated against her after she took leave under the federal Family Medical Leave Act (FMLA). The County removed the case to federal court and moved for summary

judgment on all claims. The district court[1] granted summary judgment to the County on Doucette's FMLA retaliation claim and her two MHRA discrimination claims. The district court denied summary judgment on Doucette's MHRA reprisal claim but, declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c), remanded this claim to state court. Doucette only appeals the court's grant of summary judgment on her MHRA discrimination claims, not on her FMLA claim. Since Doucette's evidence does not create a genuine issue of material fact as to whether her discharge was motivated by discrimination, we affirm.[2]

## I. Background[3]

Doucette worked for Morrison County for thirty years, including seventeen years as the assistant jail administrator. The County fired her in November 2011 for repeated record-keeping errors. Doucette asserts her record-keeping duties comprised just a small part of her job: she maintained the jail's records and accounts, oversaw jail staff and operations, and supervised inmate programming and services. At the times most relevant to her claims, Doucette was supervised by jail administrator Lieutenant Michael Monnier and by Sheriff Michel Wetzel.

For several years as the assistant jail administrator, Doucette had only minor performance issues. In 2007, however, Doucette began to accrue disciplinary citations, the details of which are set out in the district court opinion. She received verbal reprimands in January and March 2007 regarding billing errors. For over two years thereafter, there were no documented incidents. Doucette's employee evaluation

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]We exercise appellate jurisdiction under 28 U.S.C. § 1291.

[3]We recite the facts in the light most favorable to Doucette, the nonmoving party. O'Brien v. Dep't of Agric., 532 F.3d 805, 808 (8th Cir. 2008).

in October 2009 rated her as "meet[ing] expectations" in most categories and noted improvement over the previous year in her billing accuracy. In November 2010, Monnier issued a letter of reprimand to Doucette. The letter noted repeated billing errors that had continued even after he met with her in September 2010 to discuss previous errors and the importance of accurate billing. Doucette was placed on a six-month corrective action plan, requiring her to take additional steps to verify and obtain approval of the jail's billing statements before mailing invoices. The corrective action plan ended in May 2011.

One of Doucette's duties was to conduct monthly reconciliations of inmates' commissary accounts, in accordance with a September 2010 recommendation from a state auditor. No one was assigned to complete these reconciliations while she was on vacation from late January through late February 2011. In May 2011, Monnier asked Doucette about the status of the reconciliations, and she falsely said she had completed them; she later testified she wanted to "get him off [her] back" while she resolved discrepancies between their computer records and bank records. One month later, the two met again, and Doucette told him about the discrepancies for the first time. Monnier and Doucette then met with Wetzel, and Doucette said only three reconciliations had been done since September 2010. Monnier noted an error with one of the reconciliations and another incorrect bill, and he subsequently placed Doucette on a three-day suspension. After a meeting in July 2011 to discuss two more billing errors, Doucette was suspended for five days.

Doucette took FMLA leave in August 2011. Just before she left, she filed a union grievance regarding her five-day suspension, and she submitted a complaint to the County alleging sex and age discrimination. She returned to work in October 2011. Since Doucette had attributed her errors in part to her workload, Monnier suggested that co-workers assume some of her non-billing responsibilities. Doucette contends that upon her return, the County harshly scrutinized her work and gave confusing directions about a new policy to be implemented. In November 2011, she

made two more billing mistakes: overcharging the County by $15 to $20 for an inmate's medication, and neglecting to include a particular document when submitting an invoice to Monnier. She was fired shortly thereafter. She was 55 years old at the time. Doucette asserts her discharge was due to her age and her sex, rather than due to the billing errors.

## II. Discussion

Doucette appeals the district court's grant of summary judgment on her claims of sex and sex-plus-age discrimination under the MHRA. Minn. Stat. § 363A et seq. We review de novo a grant of summary judgment. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). We will affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" Torgerson, 643 F.3d at 1042 (quoting Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Id. (quoting Ricci, 129 S. Ct. at 2677).

## A. Sex Discrimination Claim

Doucette contends the County fired her based on her sex, not on the billing errors outlined above, in violation of Minn. Stat. § 363A.08(2).[4] "Employment

---

[4]"Except when based on a bona fide occupational qualification, it is an unfair employment practice for an employer, because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, familial status, membership or activity in a local commission, disability, sexual orientation, or age to . . . discharge an employee." We note "familial status" was added effective May 12, 2014.

discrimination may be established under either a disparate impact or disparate treatment theory." Goins v. West Group, 635 N.W.2d 717, 722 (Minn. 2001) (citation omitted). As Doucette's claims concern disparate treatment, she must demonstrate the County acted with a discriminatory motive in terminating her employment. Id. (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)).[5]

A discriminatory motive may be established through direct evidence or indirect evidence. Id. at 722–24. In considering MHRA claims that, like Doucette's, are based on indirect evidence of discrimination, we apply the three-step burden-shifting framework developed for Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Hunter, 697 F.3d at 702 (citing Sigurdson v. Isanti Cnty., 386 N.W.2d 715, 719–20 (Minn. 1986)). Under the McDonnell Douglas framework, Doucette must first make a prima facie case of discrimination by showing "(1) she is a member of a protected group; (2) she was qualified for her position; (3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination." Elam v. Regions Fin. Corp., 601 F.3d 873, 879 (8th Cir. 2010) (quotation omitted). If she succeeds in making a prima facie case, "the burden of production shifts to the [County] to articulate a non-discriminatory, legitimate justification for its conduct, which rebuts [her] prima facie case." Id. (quotation omitted). If the County meets its burden, Doucette must "produce evidence sufficient to create a genuine issue of material fact regarding whether [the County's] proffered nondiscriminatory reason is a pretext for discrimination." Id. (quotation omitted).

To establish a prima facie case, Doucette argues the County's reasons for firing her were pretextual. See Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir.

---

[5]"When interpreting cases under the MHRA, Minnesota courts give weight to federal court interpretations of Title VII claims because of the substantial similarities between the statutes." Hunter v. United Parcel Serv., Inc., 697 F.3d 697, 702 (8th Cir. 2012) (citing Wayne v. MasterShield, Inc., 597 N.W.2d 917, 921 (Minn. Ct. App. 1999)).

2010) ("Evidence of pretext, normally considered at step three of the <u>McDonnell Douglas</u> analysis, can satisfy the inference-of-discrimination element of the prima facie case."). Doucette offers the same proof of pretext as at step three, which requires a more demanding inquiry. We therefore assume without deciding that her evidence is sufficient to generate an inference of discrimination and she has met her burden at step one.[6]

At step two of <u>McDonnell Douglas</u>, the County rebuts Doucette's prima facie case by contending she was fired for repeatedly making billing errors, after she had been reminded of the importance of accuracy and received accommodations for her workload. A legitimate reason for discharge may include the plaintiff's lack of improvement "in the specific areas in which she was counseled." <u>Cherry</u>, 361 F.3d at 479. Doucette does not dispute that she made these errors; nor does she deny that she misrepresented the status of the reconciliations. Instead, she argues that the errors were expected and fixable in the context of her job and did not damage the County's reputation. However, "[w]e do not sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." <u>Elam</u>, 601 F.3d at 880–81 (quotation omitted). It is not our role to question that Doucette's errors were a problem for her employer. Consequently, we find the County has met its burden to justify the decision to fire Doucette.

---

[6]At the prima facie stage, we apply a "low-threshold standard." <u>Wimbley v. Cashion</u>, 588 F.3d 959, 962 (8th Cir. 2009); <u>see also</u> <u>Sprenger v. Fed. Home Loan Bank of Des Moines</u>, 253 F.3d 1106, 1111 (8th Cir. 2001) ("[A] prima facie case requires only a minimal showing before shifting the burden to the employer." (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993))). In contrast, we apply a "rigorous standard" when evaluating pretext at step three. <u>Cherry v. Ritenour Sch. Dist.</u>, 361 F.3d 474, 479 (8th Cir. 2004).

Because the County offered a "non-discriminatory, legitimate justification for its conduct," Elam, 601 F.3d at 879, we proceed to step three, where Doucette must raise an issue of fact as to whether the County's reason for firing her was pretextual. Doucette "must prove more than the prima facie case to show pretext, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." Chappell v. Bilco Co., 675 F.3d 1110, 1117 (8th Cir. 2012) (quotation omitted). To show pretext, Doucette first asserts that her positive performance review in 2009 casts doubt on the validity of her subsequent disciplinary record. Prior evaluations "may show that [Doucette] had performed competently in the past, but they do not render her more recent negative evaluations inherently untrustworthy." Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1109 (8th Cir. 1998). Moreover, most of her billing errors and resulting discipline occurred after the 2009 performance review, and "employers may choose to rely on recent performance more heavily than past performance." Twiggs v. Selig, 679 F.3d 990, 994 (8th Cir. 2012) (quotation omitted). Doucette's 2009 performance review does not create an issue of material fact regarding the County's intent in firing her.

As an additional way to demonstrate pretext, Doucette contends she was treated differently from similarly situated male employees. See Lake, 596 F.3d at 874. We may find the County's asserted reason for firing Doucette was pretextual if "it was not the [County's] policy or practice to respond to [performance] problems in the way it responded" in her case. Erickson v. Farmland Indus., Inc., 271 F.3d 718, 727 (8th Cir. 2001). Doucette has the burden to demonstrate by a preponderance of the evidence that there were male County employees who were not disciplined as she was for comparable conduct. See Gilmore v. AT&T, 319 F.3d 1042, 1046 (8th Cir. 2003). Doucette suggests as apt comparators two male County employees who performed

different jobs but, like her, had performance issues.[7]  "The similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone." Ridout v. JBS USA, LLC, 716 F.3d 1079, 1085 (8th Cir. 2013) (quotation omitted). Doucette must "prove only that the other employees were similarly situated in all relevant respects."  Id. (quotation omitted).

First, Doucette notes that Monnier rated a crew leader, age 49, as deficient for three years with respect to intake processing standards.[8] The crew leader also violated safety standards by allowing inmate crews to work without protective gear, and he worked for an extended period without a professional certification that was purportedly necessary for his job.  Doucette contends these errors "indicate[ his] chronic failure to follow safety and other jail policies"—and while Monnier was aware of these issues, the crew leader was never disciplined.  Second, Doucette asserts that Monnier received several reports that a correctional officer, age 54, had mistreated inmates.  Monnier gave the correctional officer a notice of performance deficiency for inmate supervision and communications at his annual review in 2011, but Doucette contends he, too, was never disciplined.

---

[7]Doucette offered six comparators at the district court; on appeal, she focuses her argument on two of them.  The district court discounted evidence related to these two employees, finding Doucette had not corroborated their alleged misconduct beyond her own deposition and declaration.  We note that Doucette may support her argument as to the existence of a disputed fact with materials in the record that include depositions and declarations.  See Fed. R. Civ. P. 56(c)(1)(A).  As the County does not argue this point on appeal, we assume Doucette has cited sufficient evidence for us to consider these two comparators.

[8]The parties designated certain portions of the record as confidential in accordance with the district court's protective order.  To continue to protect the privacy of County employees not directly involved in this case, we have omitted the names of Doucette's proffered comparators and have only provided the factual background necessary for our analysis.

Although Doucette and her co-workers were all supervised by Monnier, Doucette faces particular difficulties in meeting her burden to demonstrate that other employees were similarly situated. No one else had a similar job, so none of her co-workers made easily comparable mistakes. It is possible that the correctional officer's alleged mistreatment of inmates, though different in kind from Doucette's billing errors, would merit greater punishment. See id. ("[D]emanding that the compared employees have engaged in precisely identical conduct would make an employee's conduct which was *more* serious than that of the plaintiff irrelevant to the analysis. Common sense as well as our case law dictates that we reject such an approach." (quotation omitted)). Nevertheless, even if Doucette's co-workers' misconduct need not be identical to hers, their actions—apparent noncompliance with certain jail safety policies and mistreatment of inmates—are too "different in type" to be probative of pretext at this stage. Id.

Doucette also has not provided enough information regarding her two male co-workers that, if true, would give rise to a genuine issue of material fact. We gauge the seriousness of misconduct in part based on its frequency, and Doucette has not indicated how many times these asserted comparators engaged in the misconduct for which she asserts they should have been disciplined. See Elam, 601 F.3d at 881; see also Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691–92 (8th Cir. 2002) (citing employees' disciplinary history as an important factor in assessing whether they were similarly situated). Doucette notes complaints regarding the correctional officer's actions, but the record does not reflect whether those complaints were investigated or resolved, and she does not contend this question is material to our analysis of her claim. Also, one of the crew leader's deficiencies was his speed in intake processing, but unlike Doucette's billing errors, this was not one of his job requirements: he only assisted with intake when correctional officers were unavailable. Given the lack of similarly situated employees who were treated differently, and the dearth of other evidence of discriminatory intent, Doucette has not met her burden under McDonnell Douglas to establish that the County's proffered reason for her discharge was pretext

for discrimination. We affirm the district court's grant of summary judgment on Doucette's sex discrimination claim.

## B. Sex-plus-Age Discrimination Claim

Doucette also appeals the district court's grant of summary judgment on her claim of sex-plus-age discrimination under the MHRA. "'Sex-plus' discrimination occurs when employees are classified on the basis of sex plus one other seemingly neutral characteristic." Knott v. Mo. Pac. R. Co., 527 F.2d 1249, 1251 (8th Cir. 1975). Doucette claims the County discriminated against her as an older woman. Although the Minnesota Supreme Court has not had occasion to recognize a claim for sex-plus-age discrimination under the MHRA, the Minnesota Court of Appeals has done so. See Pullar v. Indep. Sch. Dist. No. 701, 582 N.W.2d 273, 277 (Minn. Ct. App. 1998) (citing Phillips v. Martin Marietta Corp., 400 U.S. 542 (1971) (per curiam)). The County seeks to distinguish Pullar on the grounds that it dealt with a "sex-plus" discrimination claim where the additional characteristic, familial status, was not otherwise protected under the MHRA. However, we agree with the district court that a claim of sex-plus-age discrimination is likely cognizable under the MHRA.[9] After all, as the district court noted, age is one way an employer could discriminate against some members of one sex but not the other.[10] Moreover,

---

[9]Although we have not decided the question, several other circuits have recognized "sex-plus" claims brought by plaintiffs with two protected characteristics. See, e.g., Shazor v. Prof'l Transit Mgmt., Ltd., 744 F.3d 948, 958 (6th Cir. 2014) (recognizing Title VII claim by subclass of African American women); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 109–10 (2d Cir. 2010) (recognizing "age-plus-gender" discrimination claim, when complaint brought claims under ADEA and Title VII); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1416 (10th Cir. 1987) (recognizing Title VII claim by subclass of African American women); Jefferies v. Harris Cnty. Comm'ty Action Ass'n, 615 F.2d 1025, 1033–34 (5th Cir. 1980) (same).

[10]We assume without deciding that Doucette's sex-plus-age discrimination claim was adequately pled for purposes of our summary judgment review. Her

Doucette contends her sex and her age both played a role in the County's decisions, and "[t]hese characteristics do not exist in isolation." Shazor, 744 F.3d at 958. "To be actionable, however, 'sex-plus' discrimination claims must be premised on gender. 'Sex-plus' plaintiffs can never be successful unless there is a corresponding sub-class of members of the opposite gender." Pullar, 582 N.W.2d at 277 (citing Coleman v. B-G Maint. Mgmt., 108 F.3d 1199, 1203 (10th Cir. 1997)). Here, Doucette's "corresponding sub-class" is comprised of older men.

Doucette offers both direct and indirect evidence of sex-plus-age discrimination. Direct evidence may include "remark[s] by a decisionmaker [that] . . . show a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action." Torgerson, 643 F.3d at 1045–46. However, "direct evidence does not include stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself." Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th Cir. 2006) (quotation omitted). As direct evidence, Doucette notes two statements indicating intent to discriminate against her based on her age: (1) Wetzel's comment that older people should not be in law enforcement; and (2) Monnier's question to Doucette's daughter as to whether she intended to retire or return to work after vacation.

At her deposition, Doucette said that Wetzel "made a comment where he was at one of our staff meetings that women—or not women, that old people shouldn't be working in our profession because they get injured." She then clarified that by "our profession," she meant "law enforcement." Wetzel's audience was older women, but

complaint alleged that younger, male colleagues were treated differently than she was, and she included MHRA claims for both sex and age discrimination. See Gorzynski, 596 F.3d at 110 ("Gorzynski's complaint did not contain a claim under the ADEA or Title VII based explicitly on an age-plus-sex or sex-plus-age theory of discrimination, nor need it have to survive summary judgment.").

there is no evidence he meant older women were particularly prone to injury or should take greater care than men to avoid injury by not working in law enforcement. Wetzel's comment was gender-neutral; even if taken to apply to his audience, Doucette has not demonstrated this remark, while made by a "decisionmaker," was connected to "the decisional process itself." Id.

Doucette also cites a question by Monnier to her daughter, Tracy LeBlanc, as evidence that he wanted her to retire. Though LeBlanc's and Monnier's reports of the conversation differ, we take the facts in the light most favorable to Doucette, the nonmoving party. In her declaration, LeBlanc wrote that while Doucette was on vacation, "Mike Monnier approached me an[d] asked whether my mother, Mary Doucette[,] was planning on retiring. I responded to Mike that mom had no intention of retiring." Although retirement inquiries may be "so unnecessary and excessive—that is, unreasonable—as to constitute evidence of discriminatory harassment," asking a question about someone's retirement plans is not inherently discriminatory. Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 497 (8th Cir. 1998) (citations omitted). We do not find Monnier's question unreasonable.

As indirect evidence, Doucette provides substantially the same proof for this claim as for her sex discrimination claim. She fails to demonstrate that the County's asserted cause for terminating her was pretextual for the same reasons. Based on the record Doucette has presented, we cannot infer discriminatory intent motivated her termination, as her two male co-workers of comparable age did not engage in sufficiently similar misconduct or have a similar disciplinary history. In addition, she contends a younger female employee had received more favorable treatment. After Doucette complained to Monnier that the younger woman was taking excessive breaks, Monnier instituted a uniform policy regarding the duration of lunch and other breaks. However, there is no evidence that this policy was enacted in a punitive way, and absent more, it does not reflect discriminatory treatment of Doucette as an older

woman. In sum, Doucette has not presented evidence sufficient to create a genuine issue of material fact as to her sex-plus-age discrimination claim.

### III. Conclusion

For the reasons above, we affirm the district court's grant of summary judgment on both claims.

_____