# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3349

_____

Tracy Harrell,

*Plaintiff - Appellant,*

v.

Handi Medical Supply, Inc.,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 17, 2018
Filed: April 9, 2019

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Tracy Harrell brought this action against her former employer, Handi Medical Supply, Inc., alleging violations of the Minnesota Human Rights Act (MHRA) and the Family Medical and Leave Act (FMLA). The district court[1] granted summary

_____

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

judgment in favor of Handi on all claims. Harrell appeals the dismissal of only two claims under the MHRA. Without deciding whether the district court's rationale was correct, we conclude that the judgment should be affirmed on alternative grounds.

I.

As the case was resolved on summary judgment, we recite the facts in the light most favorable to Harrell. Handi Medical is a medical equipment company located in St. Paul, Minnesota. The company employed Harrell as a Lead Customer Service Representative from 2012 until 2015. In 2013, the company approved Harrell for intermittent leave under the FMLA, and she used the leave to support her husband, who suffers from severe bipolar disorder.

On August 5, 2015, Handi Medical's management called a meeting to announce temporary changes to its customer service department. The changes required Harrell to accept a demotion in stature by assuming responsibilities of a customer service representative.

Harrell left the meeting and returned to her desk. She sent an e-mail to her husband that said, "I really need to talk to you, I am upset." She then called her husband; he became angry and threatened to come to the company's offices to talk to the chief executive officer about the changes.

Harrell became worried about her husband and asked to take FMLA leave for the afternoon. Human resources director Julie Peterson approved the request. Harrell then returned to her desk, swung her identification badge around her hand, and threw the badge in her purse. Co-workers reported that as Harrell prepared to leave, she said she "has had it with this place" and cursed loudly within earshot of customers. When a co-worker asked Harrell a work-related question, Harrell responded, "You

are going to need to talk to [another manager]. I am done. I got to go. I am done right now." She then departed.

Harrell's co-workers reported her conduct to human resources director Peterson and the company's chief operating officer, Scott Learned. Learned interviewed two more employees about the incident, and then reported it to chief executive officer Mike Bailey. In response, Bailey prepared a written warning for Harrell, saying that the reported behavior would not be tolerated, and that failure to observe workplace rules would result in further discipline, including termination.

On August 11, Bailey summoned Harrell to meet with him and Learned, and Bailey issued the written warning. He explained that he was taking the action in response to her conduct on August 5, and admonished her that it was unacceptable to curse and complain in front of customers and other employees. Harrell disputed that she used profanity and refused to sign the document acknowledging the discussion. She explained that she left the office frantically on August 5 because she was worried about her husband. Bailey responded that it always seemed like she had an excuse. Harrell then accused Bailey of using her husband's disability against her. Bailey asked Harrell why she would tell her husband about the organizational changes if she knew that the information would upset him.

At this point, Peterson and another manager joined the meeting. Bailey allegedly "got red-faced," moved his chair toward Harrell, pointed at her, and asked whether she was accusing him of using her husband's disability against her. Harrell responded that she felt that way because Bailey was accusing her of acting unprofessionally after going home due to FMLA leave. Bailey then told her never to accuse him of discriminating against her because of her husband's condition.

After more discussion, Bailey decided that if Harrell "truly felt that way that she was describing that she would be better off working elsewhere." According to

Harrell, company officials observed that she and her family were unhappy, and said that "maybe we should—can find an exit strategy when Scott [Learned] returns." As Harrell left the meeting, she muttered Handi's motto—"enriching lives"—in a disparaging way. Upon hearing that remark, Bailey called Harrell back into his office and terminated her employment immediately.

Harrell sued Handi Medical, alleging four claims that the company discriminated against her in violation of the MHRA and FMLA. The only two claims at issue on this appeal arise under the MHRA. One alleges discrimination against Harrell based on her marital status. Under the MHRA, marital status includes "protection against discrimination on the basis of the identity, situation, actions, or beliefs of a spouse." Minn. Stat. § 363A.03, subd. 24. The second claim asserts "reprisal" against Harrell for opposing an unlawful employment practice. "Reprisal" under the MHRA includes "intimidation, retaliation, or harassment," and Harrell alleged that Handi Medical retaliated against her for opposing discrimination based on marital status. *Id.* § 363A.15. Harrell asserts that the company's declaration that she would be subject to an "exit strategy" was an adverse employment action taken based on her marital status and her opposition to discrimination based on marital status.

The district court determined that Harrell had established a *prima facie* case on these claims, but rejected her argument that the discussion of an "exit strategy" was an adverse employment action. The court concluded that the only adverse employment action was the immediate termination that came in response to Harrell's comment about "enriching lives." With that frame of reference, the court decided that Harrell's insubordinate remark was a non-discriminatory reason for the termination, and that Harrell failed to present sufficient evidence that the reason was pretextual. The court thus granted summary judgment in favor of Handi. We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most

-4-

favorable to Harrell. *Thomas v. Heartland Emp't Servs. LLC*, 797 F.3d 527, 529 (8th Cir. 2015).

## II.

Both of Harrell's claims under the MHRA require her to establish that the company took an adverse employment action against her and that there was a causal connection between her protected activity or status and the adverse action. *See Doucette v. Morrison County*, 763 F.3d 978, 982 (8th Cir. 2014); *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 548 (Minn. 2001). One dispute on this appeal concerns when Handi Medical took adverse action against Harrell.

Harrell contends that when company officials discussed arranging an "exit strategy" for Harrell, the company took an adverse employment action by setting in motion a process to terminate her employment. The "exit strategy" discussion occurred *before* Harrell's insubordinate remark about the company's motto, so her sarcastic reference to "enriching lives" could not have justified implementing the "exit strategy." The district court concluded that the discussion of an exit strategy was not an adverse employment action because "there was no agreement that an 'exit strategy' would actually happen or that Harrell would ultimately be terminated." Harrell disputes this conclusion.

We deem it unnecessary to resolve the dispute over the meaning of the "exit strategy" discussion. Assuming for purposes of analysis that the company took adverse action against Harrell during the meeting on August 11 when Bailey raised the "exit strategy," Handi Medical argues that there are alternative grounds on which to affirm the judgment. We conclude that these other grounds have merit.

On the reprisal claim, Harrell must establish that she engaged in protected conduct, and that the company took adverse action against her because of that

conduct. A person engages in protected conduct when she "oppose[s] a practice forbidden" under the MHRA. But not every complaint about alleged unlawful discrimination is protected. The Minnesota Supreme Court has not decided whether the complained-of conduct must actually be unlawful for a complaint to constitute protected "opposition," but at a minimum, Minnesota requires that the employee have a good-faith reasonable belief that the conduct she opposed was a violation of the MHRA. *Bahr v. Capella Univ.*, 788 N.W.2d 76, 81-82 (Minn. 2010).

The alleged protected conduct in this case was Harrell's complaint that Bailey, by issuing the written warning on August 11, was discriminating against her because of her marital status—namely, her husband's situation. It is undisputed, however, that Bailey had received reports from company staff that Harrell caused a scene in the office, made disparaging remarks about the company, and used profanity that could be overheard by co-workers and customers. Harrell disputes that she cursed in the office, but there is no dispute that Bailey acted on information from co-workers that she had done so, and Bailey's motivation is the relevant fact.

That Harrell's outburst may have been triggered in part by her husband's situation did not support a reasonable belief that Bailey issued the written warning because of Harrell's marital status. Harrell admitted that if the reports to Bailey were accurate, then her conduct would be cause for discipline, and there is no dispute that Bailey acted on such reports. After Bailey issued the warning, Harrell did raise her husband's situation as an excuse or explanation for her conduct. But Harrell's marital status did not give her license to engage in unprofessional conduct that would be unacceptable from any other employee, so the company's unwillingness to withdraw the discipline did not supply reasonable grounds to believe that the company was discriminating based on marital status. A baseless accusation that an employer violated the MHRA is not protected opposition under the reprisal statute. We thus conclude that even if Bailey took adverse action against Harrell during the August 11 meeting by raising the "exit strategy," she cannot show that the action was taken

because of protected opposition to an unlawful employment practice under the MHRA.

In addition to alleging unlawful reprisal, Harrell also claims that Handi Medical discriminated against her based on her marital status. To prove this claim, Harrell must show that the company took an adverse action against her "on the basis of the identity, situation, actions, or beliefs" of her spouse. Minn. Stat. §§ 363A.03, subd. 24; *see also id.* § 363A.08; *Doucette*, 763 F.3d at 982. Because the record was fully developed on the motion for summary judgment, we consider the ultimate question of discrimination *vel non*, *Otto v. City of Victoria*, 685 F.3d 755, 758 (8th Cir. 2012), and we conclude that there is insufficient evidence to proceed on this claim.

While Bailey raised the "exit strategy" after Harrell complained about the company using her husband's situation against her, the record does not support an inference that the company suddenly decided to terminate Harrell based on her marital status. The company, after all, consistently had granted Harrell leave under the FMLA to care for her husband's needs. It was only when Harrell offended Bailey by suggesting that he was unlawfully discriminating that the exit strategy was broached. Bailey did question why Harrell told her husband of the company's organizational changes during the work day on August 5 when she understood that the news would upset him. But this comment was a critique of *Harrell's judgment*, not a complaint about her husband's situation or actions. The company's generic acknowledgment that both Harrell and "her family" were unhappy with recent events is insufficient to show that the company acted against her because of her husband's situation rather than Harrell's conduct and attitude. Even taking the evidence in the light most favorable to Harrell, we do not see a sound basis to conclude that the decision to arrange an "exit strategy" was motivated by Harrell's marital status.

\* \* \*

-7-

For the foregoing reasons, the judgment of the district court is affirmed.

_____