

# NUMBER 13-21-00365-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

EDCOUCH-ELSA INDEPENDENT
SCHOOL DISTRICT,                                                        Appellant,

v.

LISA CABRERA,                                                             Appellee.

## On appeal from the 332nd District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Edcouch-Elsa Independent School District (EEISD) appeals the denial

of its plea to the jurisdiction in this employment discrimination suit brought by appellee

Lisa Cabrera, a former EEISD employee. By two issues that we construe as one, EEISD

argues that the trial court erred when it denied its plea as to Cabrera's discrimination

claims under the Texas Commission on Human Rights Act (TCHRA) because Cabrera fails to provide evidence of a statutorily protected violation. *See* TEX. LAB. CODE ANN. §§ 21.001–.556. We reverse and render.

## I.   BACKGROUND

Cabrera first began her employment with EEISD in 1997. In May 2019, Cabrera's employment was terminated due to "excessive absences and documented instances of checking [sic] during the work[ ]day." Cabrera filed a discrimination charge with the Texas Workforce Commission (TWC) on August 1, 2019, contending that she had been discriminated based on her sex and age. After receiving a "right to sue" letter from the TWC on December 30, 2020, Cabrera filed the underlying suit bringing the same causes of action under the TCHRA.

EEISD filed its original answer and a plea to the jurisdiction, wherein EEISD asserted that the trial court lacked jurisdiction over Cabrera's claims because she is unable to proffer evidence of her discrimination claims. In support of its motion, EEISD attached Cabrera's TWC complaint, her original petition, an affidavit from human resources stating the reasons for Cabrera's termination, and the notice of termination letter sent to Cabrera.

By written response, Cabrera argued: "governmental immunity has absolutely nothing to do with these [TCHRA] claims"; "[i]f this were a true to [sic] plea to the jurisdiction, *it would not turn on why* [EEISD] *maintains that it fired* [Cabrera]"; EEISD's plea to the jurisdiction "was procedurally rendered moot upon" Cabrera's filing of her first

2

amended petition[1]; and EEISD's affidavit in support of its plea to the jurisdiction should be stricken. Cabrera also filed an affidavit, wherein she contended that she became the subject of unfair treatment at work following an "awkward encounter" involving her supervisor Monica Vela-Barco and Vela-Barco's husband, Tony Barco.[2] The incident occurred mid-November 2018 inside Vela-Barco's office. Cabrera contends Barco looked at her and "made an expression through facial or body language[] that drew the immediate anger of [Vela-Barco], who became visibly upset." Cabrera stated, "I recall having the distinct impression at that time that [Vela-Barco] now regarded me negatively for the reason that she considered me to be a potential or actual distraction to the interest and attention of her husband's." According to Cabrera, a few weeks after this incident, Vela-Barco "issued a writeup," claiming that Cabrera had declined to complete "a particular task that [Vela-Barco] knew was within another's familiarity and job purview." Cabrera asserted that she later heard that Vela-Barco had gone to Barco's father, a school board trustee, to report that Cabrera had been having an affair with Barco—an allegation that Cabrera denies. Cabrera further denied ever being "written up or otherwise disciplined for absences." Cabrera stated that she was ultimately terminated from her employment and replaced with a woman who "would pose no similar threat to the marital security of [Vela-Barco] because one, she was not viewed by him in past times as a romantic interest that he felt attraction to, and two, she is married to another woman." Cabrera acknowledged that her replacement is one year older than her and of the same ethnicity.

---

[1] Two weeks after EEISD filed its plea to the jurisdiction, Cabrera filed her first amended petition.

[2] Cabrera states that she and Barco were "in an exclusive dating relationship" in high school from January to June 1993.

Following a hearing, the trial court denied EEISD's requested relief. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (providing for interlocutory appeal from a trial court's order on a plea to the jurisdiction).

## II.    MOOTNESS

Cabrera briefly avers on appeal that EEISD's plea to the jurisdiction is "moot in view of the subsequently filed live pleadings." Mootness implicates subject matter jurisdiction, and an appellate court is prohibited from deciding a moot controversy. *Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634 (Tex. 2021). Therefore, we address this matter first.

Amended pleadings take the place of prior pleadings. *See* TEX. R. CIV. P. 65. Claims raised in an original petition or prior pleading but absent in subsequent amended pleadings are no longer "live" and thereafter cannot be subject to challenge. *See Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012); *see, e.g.*, *City of Hidalgo Ambulance Serv. v. Lira*, 17 S.W.3d 300, 304 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.) ("The plea addressed a claim of waiver of liability that was no longer in the petition; it was indeed moot."). In contrast, claims which remain following an amended filing, challenged in a dispositive motion *prior* to the amended filing, may remain challengeable. *See, e.g.*, *Ward v. Lamar Univ.*, 484 S.W.3d 440, 449 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (concluding, where a plaintiff filed an amended petition after the defendant filed a plea to the jurisdiction, that the trial court appropriately addressed claims challenged in defendant's plea to the jurisdiction which remained in the live petition but could not address new claims which post-dated the plea to the

4

jurisdiction); *Lira*, 17 S.W.3d at 304 (rejecting the plaintiff's argument that "the appeal is moot with respect to the second plea to the jurisdiction, because the deficiencies complained about in that plea were addressed in their Third Amended Original Petition," which had been filed *after* the second plea to the jurisdiction); *see also City of San Antonio v. Reyes*, No. 04-16-00748-CV, 2017 WL 3701772, at *4 (Tex. App.—San Antonio Aug. 23, 2017, no pet.) (mem. op.) (concluding plaintiffs' amended pleading did not moot defendant's plea to the jurisdiction where the amendment did not address or cure the defendant's challenge).

Cabrera's amended petition, filed three days after EEISD's plea to the jurisdiction, contained no new claims. The only substantive addition was the incorporation of her affidavit into the body of the amended petition—which had previously been filed in response to EEISD's plea to the jurisdiction. Because EEISD's plea to the jurisdiction addresses the same claims which exist in the live petition—and for reasons discussed below, the amended petition did not allege facts which would cure EEISD's challenge— EEISD's plea to the jurisdiction was not rendered moot by Cabrera's amended petition. *See Ward*, 484 S.W.3d at 449; *Lira*, 17 S.W.3d at 304.

### III.    PLEA TO THE JURISDICTION

### A.    Standard of Review and Applicable Law

As a public school district, EEISD is immune from suit absent an express waiver of governmental immunity. *See Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904 (Tex. 2021); *El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 526 (Tex. 2020). The TCHRA—which prohibits an employer from committing an "unlawful

5

employment practice" against an employee "because of" the employee's "race, color, disability, religion, sex, national origin, or age"—creates such waiver of immunity. TEX. LAB. CODE ANN. §§ 21.002(8)(D), 21.051; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 n.33 (Tex. 2012) ("TCHRA clearly and unambiguously waives immunity for school districts.").

Immunity from suit implicates a trial court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022); *Alamo Heights*, 544 S.W.3d at 770. When, as here, jurisdictional facts are challenged, our standard of review mirrors that of a summary judgment. *Alamo Heights*, 544 S.W.3d at 771; *see City of San Antonio v. Riojas*, 640 S.W.3d 534, 536 (Tex. 2022). In response to a plea to the jurisdiction, a plaintiff must allege "facts that would establish that the state agency violated the [TCHRA] and, when challenged with contrary evidence, provides evidence that is at least sufficient to create a genuine fact issue material to that allegation." *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) (citing *Alamo Heights*, 544 S.W.3d at 770–71). A plaintiff may rely on either direct or circumstantial evidence, and we take as true all evidence favorable to the plaintiff. *Id.* "In both direct- and circumstantial-evidence cases, the burden of persuasion remains at all times with the employee." *Alamo Heights*, 544 S.W.3d at 782.

"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Williams–Pyro, Inc. v. Barbour*, 408 S.W.3d

467, 478 (Tex. App.—El Paso 2013, pet. denied) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)); *see Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 433 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see also Chau v. Harlingen Med. Ctr.*, No. 13-15-00115-CV, 2016 WL 1072619, at *3 (Tex. App.—Corpus Christi–Edinburg Mar. 17, 2016, pet. denied) (mem. op.). For example, "specific expressions of negativity or animosity about a person's age or other protected status can constitute direct evidence to support a claim of illegal discrimination." *Flores*, 612 S.W.3d at 313. However, a plaintiff's own subjective beliefs of an employer's state-of-mind or allegations of an employer's statements too vague or attenuated from the offending incident (i.e., termination) would not constitute "direct evidence." *Id.*; *see, e.g.*, *Donaldson*, 495 S.W.3d at 434 (concluding that evidence that a supervisor would "roll her eyes when [plaintiff] arrived for a meeting and would 'single him out,'" or that the plaintiff was "picked on" or treated "differently with regards to discipline" was not direct evidence of race discrimination).

Recognizing that an employer's "motives are often more covert than overt, making direct evidence of forbidden animus hard to come by," the United States Supreme Court created the *McDonnell Douglas* burden-shifting framework—which the Texas Supreme Court has since adopted for its analysis of TCHRA claims.[3] *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 583 (Tex. 2017) (quoting *Mission Consol.*, 372 S.W.3d at 634); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also City of*

---

[3] "Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,'" we consider analogous federal cases interpreting Title VII. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (quoting TEX. LAB. CODE ANN. § 21.001(1)).

*Richland Hills v. Childress*, No. 02-20-00334-CV, 2021 WL 4205013, at *4 (Tex. App.—Fort Worth Sept. 16, 2021, pet. denied) (mem. op.) (noting the "rarity" of the existence of direct evidence of discrimination in employment cases). The *McDonnell Douglas* burden-shifting framework applies when a plaintiff relies on circumstantial evidence. *Flores*, 612 S.W.3d at 305 (citing *McDonnell Douglas*, 411 U.S. at 802). "Under this framework, the plaintiff is entitled to a presumption of discrimination if she meets the 'minimal' initial burden of establishing a prima facie case of discrimination"—that is, the plaintiff must provide evidence of each element of her TCHRA cause of action. *Mission Consol.*, 372 S.W.3d at 634, 638. "Although the precise elements of this showing will vary depending on the allegations, . . . the plaintiff's burden at this stage of the case 'is not onerous.'" *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Rincones*, 520 S.W.3d at 584. A plaintiff's failure to make a prima facie case, however, "means the plaintiff never gets the presumption of discrimination." *Mission Consol.*, 372 S.W.3d at 637. "[T]hat failure also means the court has no jurisdiction and the claim should be dismissed." *Id.* Only if the plaintiff establishes a prima facie case of discrimination will the burden then shift to the defendant to negate or rebut the plaintiff's prima facie case; this generally requires that the defendant produce evidence of "a legitimate, nondiscriminatory reason" for the defendant's actions. *Flores*, 612 S.W.3d at 305; *see Alamo Heights*, 544 S.W.3d at 782. Thereafter, the burden returns to the plaintiff, who must "overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext." *Flores*, 612 S.W.3d at 305. "The standard of causation for reviewing pretext is less stringent under Texas

8

state law than under federal law." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 521 (5th Cir. 2021) (citing *Quantum Chem.*, 47 S.W.3d at 477, 479–80). This is because under the TCHRA, a "motivating factor" standard applies—not the federal "but for" standard. *See id.* (citing TEX. LAB. CODE ANN. § 21.125(a)); *see also San Benito Consol. Indep. Sch. Dist. v. Cruz*, No. 13-20-00310-CV, 2021 WL 921793, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 11, 2021, no pet.) (mem. op.) ("[A]n employer commits an unlawful employment practice 'because of' an employee's age if the employee's age was 'a motivating factor' for the practice, 'even if other factors also motivated the practice.'" (quoting TEX. LAB. CODE ANN. § 21.125(a))).

## B.   Discussion

As a matter of first impression, Cabrera asserts there was direct evidence of discrimination "based upon a combination of her traits relating to her gender and age." Specifically, Cabrera argues she was subjected to adverse employment action because she possessed:

> traits often associated with attractiveness and considered readily observable . . . such as good physical energy, exuberance, good posture, alertness, good hygiene, interest and pride in appearance; freedom from discomfort or pain; ease of mobility and flexibility, youthful appearance; lack of self-consciousness of personal features; healthy skin tone, tasteful adornment and other subtle traits and characteristics.

Cabrera maintains that these "endowed gender traits, femininity, physical carriage[,] or a propensity for graceful aging or defying aging" spurred her supervisor's "spouse's biological or emotional attraction to [her]" and her supervisor's affair allegations, resulting in her unlawful termination.

9

EEISD counters that Cabrera's factual allegations fall short of establishing a cognizable complaint under the TCHRA because Cabrera was replaced by an older individual of the same gender and ethnicity. EEISD characterizes Cabrera's complaint as one which alleges lawful, albeit unfair, termination due to personal circumstances stemming from a supervisor's jealousy. *See generally Wilson v. Delta State Univ.*, 143 Fed. Appx. 611, 613–14 (5th Cir. 2005) ("'[P]aramour favoritism' is not an unlawful employment practice under Title VII."); *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1200–01 (11th Cir. 2001) (concluding an employer's motivation for discharge of an employee "attributable to personal animosity . . . would not meet the Title VII requirement that the alteration of terms and conditions of employment be 'because of . . . sex'"); *Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 903 (11th Cir. 1990) (affirming the dismissal of Platner's Title VII claim, wherein she alleged she had been terminated because the wife of the business owner's son became "extremely jealous," suspecting that her husband and the female employee, Platner, were having an affair and concluding that "the ultimate basis for Platner's dismissal was not gender but simply favoritism"); *Nelson v. James H. Knight DDS, P.C.*, 834 N.W.2d 64, 66, 71 (Iowa 2013) (concluding the plaintiff's claims that she was fired because her employer's spouse was threatened by her physical appearance and believed her to be a "threat to [their] marriage" did not amount to unlawful sex discrimination because it was the personal relationship not gender

10

that was the motivating factor for termination). EEISD further avers that "a legitimate, non-discriminatory reason" for Cabrera's termination exists.[4] *See Flores*, 612 S.W.3d at 305.

We first address the parties' differing characterization of Cabrera's discrimination claims. To be clear, the TCHRA is unambiguous. *See generally Quantum Chem.*, 47 S.W.3d at 479 ("A basic rule of statutory construction is that we enforce the plain meaning of an unambiguous statute."). The TCHRA protects only against employment discrimination based on statutorily protected characteristics—as relevant here, age and/or sex. TEX. LABOR CODE ANN. § 21.051 ("An employer commits an unlawful employment practice if *because of* race, color, disability, religion, sex, national origin, or age the employer . . . .") (emphasis added); *see Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 61 (Tex. 2021) (explaining that the TCHRA makes it "an unlawful employment practice" for an employer to "discharge[] an individual" because of a "characteristic protected by the Act"); *see also Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731, 1740 (2020) (reviewing the limitations of Title VII, which "imposes liability on employers only when they . . . 'discriminate against' someone because of a statutorily protected characteristic"); *Flores v. Harlingen Consol. Indep. Sch. Dist.*, No. CV B-07-121, 2007 WL 9754445, at *3 (S.D. Tex. Nov. 2, 2007) ("Generally, discrimination is permissible when it targets an unprotected characteristic. . . . [A]ctionable discrimination based on sex plus another characteristic must be primarily based on sex.").

---

[4] For reasons made clear *infra*, our analysis stops short of examining the evidence EEISD proffered in support of its arguments, and we do not engage in a pretext analysis. *See Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) (requiring a plaintiff to first make a prima facie showing of termination based on unlawful discrimination before a court may consider a defendant's assertion that a lawful reason for termination existed or the plaintiff's rebuttal).

Over the years, the United States Supreme Court has taken an increasingly broad view of Title VII's "because of . . . sex"[5] language—language also found in the TCHRA—and interpreted the phrase to include protection from employment discrimination based upon an employer's subjectively held expectations of gender stereotypes. *See Bostock*, 140 S. Ct. at 1740; *Price Waterhouse v. Hopkins*, 490 U.S. 228, 256 (1989) (plurality op.); *U.S. Equal Emp't Opportunity Comm'n v. Scott Med. Health Ctr., P.C.*, 217 F. Supp. 3d 834, 841 (W.D. Pa. 2016) ("Forcing an employee to fit into a gendered expectation—whether that expectation involves physical traits, clothing, mannerisms or sexual attraction—constitutes sex stereotyping and . . . violates Title VII."). Most recently, the Supreme Court in *Bostock* analyzed whether an employer may be insulated from liability where the employee's "because of . . . sex" cause has been reframed to encompass "two causal factors . . . —*both* the individual's sex *and* something else." 140 S. Ct. at 1739–42. In concluding that an employer could not, the Court reiterated Title VII's "simple but momentous" message: "An individual employee's sex is 'not relevant to the selection, evaluation, or compensation of employees.'" *Id.* at 1741 (quoting *Price Waterhouse*, 490 U.S. at 239)*.* "If the employer intentionally relies in part on an individual employee's sex when deciding to discharge the employee—put differently, if changing the employee's sex

---

[5] Age is not a protected characteristic under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin"); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 475 (Tex. 2001) ("[TCHRA] is substantively identical to its federal equivalent in Title VII, with the exception that the federal law does not protect age and disability."); *but see Babb v. Wilkie*, 140 S. Ct. 1168, 1176 (2020) (observing that age is a protected characteristic under another federal provision which makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" (quoting 29 U.S.C. § 623(a)(1))).

would have yielded a different choice by the employer—a statutory violation has occurred." *Id.*

Guided by analogous precedent, we construe Cabrera's claims—however uniquely framed and without commenting on the viability of said claims—to be claims of discrimination based on age and/or sex plus a secondary cause: attractiveness.[6] *See Bostock*, 140 S. Ct. at 1739–42. However, to the extent Cabrera seeks to carve out an independent discriminatory characteristic (i.e., attractiveness), we reject such contention. *See generally Lara*, 625 S.W.3d at 61; *see also Flores*, 2007 WL 9754445, at *4 (considering a federal discrimination claim "based on sex plus attractiveness" while noting that a claim for "[a]ttractiveness alone would not suffice").

Thus, to defeat EEISD's plea to the jurisdiction, Cabrera was required to present direct or circumstantial evidence of age and/or sex discrimination. *See Lara*, 625 S.W.3d at 61; *see, e.g.*, *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1046 (10th Cir. 2020) ("[W]hen the 'plus-' characteristic is not itself protected, sex-plus discrimination claims must be premised on sex alone."); *Franchina v. City of Providence*, 881 F.3d 32, 53 (1st Cir. 2018) (concluding that a plaintiff bringing forth a "sex-plus" claim is not required to "allege more than what is required for traditional sex discrimination claims");

---

[6] We note that in reviewing caselaw concerning discrimination based on sex and a secondary cause, several courts have used the phrase "'sex-plus' discrimination." *See generally Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1033 (5th Cir. 1980) (noting that "the legislative history of Title VII supports use of the sex plus theory"); *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1045–46 (10th Cir. 2020) ("Ample precedent holds that Title VII forbids 'sex-plus' discrimination in cases in which the 'plus-' characteristic is not itself protected under the statute."); *Doucette v. Morrison County, Minn.*, 763 F.3d 978, 985 (8th Cir. 2014) ("'Sex-plus' discrimination occurs when employees are classified on the basis of sex plus one other seemingly neutral characteristic." (quoting *Knott v. Mo. Pac. R. Co.*, 527 F.2d 1249, 1251 (8th Cir. 1975))); *Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 439 (6th Cir. 2004) ("'[S]ex-plus' discrimination . . . exists when a person is subjected to disparate treatment based not only on her sex, but on her sex considered in conjunction with a second characteristic.").

*see also DeLeon v. Aaron Rents, Inc.*, No. 9:07-CV-300, 2008 WL 11347711, at *1–2 (E.D. Tex. Jan. 31, 2008) (concluding plaintiff had met her burden to set forth facts to support her gender discrimination claim premised on her physical appearance or attractiveness, where plaintiff was not hired for a position because the employer did not want to hire "a big fat girl" and "had no such 'looks' qualifications for his male employees"). Cabrera, however, rebuffs the applicability of the *McDonnell Douglas* burden-shifting framework, maintaining that this "is facially and obviously not an indirect evidence case," and because "there is no absence of *direct evidence*[,] the inquiry of who replaced [Cabrera] is inapposite." As direct evidence of age and/or sex discrimination,[7] Cabrera points to her pleadings and affidavit, and argues as follows on appeal:

- "[D]uring one of these protracted visits, [Vela-Barco] formed the present impression that her husband was attracted to [Cabrera], which enraged her and grew, persisting over weeks."

- "[Vela-Barco] unexpectedly confronted her father-in-law, the Trustee, at his home, where she created a scene which was independently relayed to [Cabrera], and [Vela-Barco] accused [Barco] of having an affair with her subordinate, [Cabrera]."

- "[Vela-Barco] made statements at work to the effect that she wanted [Cabrera] moved."[8]

- "[Vela-Barco] created several self-serving documentation issues, which would be used to take action against [Cabrera]."[9]

---

[7] Cabrera's written response to EEISD's plea to the jurisdiction contains no argument regarding direct evidence of her claims but included her affidavit.

[8] This was the extent of the evidence regarding statements allegedly made by Vela-Barco. Cabrera's affidavit states, without further elaboration: "[Vela-Barco] told individuals that she wanted me moved, after the incident in her office with [her husband]."

[9] The following is an excerpt taken from Cabrera's affidavit:

h) Within two or three weeks of this incident, [Vela-Barco] issued a writeup on December 5, 2019, wherein she asserted in quotation marks a statement attributed to me that I did

14

Cabrera provides no specific statements made by Vela-Barco explicitly relating to Cabrera's offending appearance or any discernible form of age and/or sex discrimination. *See Mission Consol.*, 372 S.W.3d at 634 (noting the "rather straightforward" nature of direct evidence, which "involves proving discriminatory intent via direct evidence of what the defendant did and said"); *Donaldson*, 495 S.W.3d at 433 ("Generally, statements that courts have found to constitute direct evidence of discrimination are insults or slurs made against a protected group."). Rather, Cabrera's affidavit contains allegations, which only by inference, could possibly give rise to evidence of a discriminatory motive. *See e.g.*, *Flores*, 612 S.W.3d at 313 (concluding that the plaintiff's testimony that her employer "preferred to work around 'younger employees,' a belief she developed based on her observation that . . . the younger employees were receiving raises and opportunities to

---

not make, concerning a particular task. [Vela-Barco] wrote in the write-up that I said[,] 'I am not going to do it'. I never said that. I did not say words having that meaning, either. I explained when presented with the document that I did not say those words, which is the reason I did not sign it, which she noted. She did not by all appearances take further action on the incident, as if she simply wanted to insert this document into my file.

i) [Vela-Barco] asked me to do a particular task that day that she knew was within another's familiarity and job purview, nevertheless I did not I say 'I am not going to do it' and if I did say that, [Vela-Barco] would not have followed it up with the words she attributed to herself in the last sentence, 'I then said that it was fine and that I would take care of it.'

j) [Vela-Barco] asked me to do a particular task that day that she knew was within another's familiarity and job purview in order that she could likely create a reaction of some kind, so as to base a write[-]up against me to put in the file, because she was resentful of the way she believed her husband viewed me. If [Vela-Barco] did say as she reported, [sic] 'I then said that it was fine and that I would take care of it' then such as statement as that would not support either my being incorrect, or discipline against me.

We note that Cabrera did not bring forth a retaliation claim. *See generally Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 763–64 (Tex. 2018) ("A retaliation claim is related to, but distinct from, a discrimination claim, and one may be viable even when the other is not. Unlike a discrimination claim, a retaliation claim focuses on the employer's response to an employee's protected activity, such as making a discrimination complaint.").

15

advance while she, the oldest in the group, was demoted in both position and salary" was not direct evidence of age discrimination); *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 186 (5th Cir. 2018) ("An inferential leap is also required to prove that Herster was paid less because of her gender when analyzing Parker's comments of 'I thought you were going to have children and be happy' and that Herster was acting like a 'princess.'"); *see also Tex. Alcoholic Bev. Comm'n v. Moralez*, No. 03-19-00588-CV, 2021 WL 3196238, at \*9 (Tex. App.—Austin July 29, 2021, no pet.) (mem. op.) ("This evidence is direct evidence of discriminatory animus—that Jones decided not to select Moralez for the captain position because of Moralez's age."); *Fenley v. Tex. Plumbing Supply Co., Inc.*, No. 14-19-00851-CV, 2021 WL 1881273, at \*3 (Tex. App.—Houston [14th Dist.] May 11, 2021, no pet.) (mem. op.) (concluding the following statement by the plaintiff constituted direct evidence of age discrimination: "Anthony also made inappropriate comments about my age, both directly and indirectly. The comments were frequent and occurred almost daily: 'you work too slow;' . . . 'you are too old for this job'").

Cabrera's evidence is best characterized as circumstantial. *See Rincones*, 520 S.W.3d at 583; *Mission Consol.*, 372 S.W.3d at 634. However, adamant that she possessed direct evidence of discrimination, Cabrera declined to produce evidence under the *McDonnell Douglas* burden-shifting framework. *See Flores*, 612 S.W.3d at 305; *Mission Consol.*, 372 S.W.3d at 634. Specifically, under the TCHRA, a plaintiff alleging age discrimination as the basis for her unlawful termination establishes her prima facie case by showing that she:

> (1) was a member of the protected class (that is, 40 years of age or older); (2) was qualified for the position at issue; (3) suffered a final, adverse

16

employment action; and (4) was either (a) replaced by someone significantly younger or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class.

*See Flores*, 612 S.W.3d at 305 (citing *Mission Consol.*, 372 S.W.3d at 632; *AutoZone v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam)). Cabrera concedes that she was replaced by a woman one year older than her (fourth element). *See Mission Consol.*, 372 S.W.3d at 642 (holding that "a plaintiff who is replaced by an older worker does not receive the inference of discrimination that the prima facie case affords"). Cabrera was therefore required to show she was treated less favorably than others similarly situated outside her protected class—that is, being 40 years of age or older—which she did not do. *See Flores*, 612 S.W.3d at 311 ("The plaintiff cannot rely merely on evidence that she was 'otherwise . . . discharged because of age,' but instead must provide comparative evidence that she was treated less favorably than those who did not fit within the protected class." (quoting *Mission Consol.*, 372 S.W.3d at 638)); *see, e.g.*, *Rincones*, 520 S.W.3d at 585 (concluding plaintiff's discrimination claim based on race or national origin claim failed where plaintiff "offered no proof, not even circumstantial evidence, of even one similarly situated person who was treated" preferentially); *cf. Hall v. RDSL Enters. LLC*, 426 S.W.3d 294, 303 (Tex. App.—Fort Worth 2014, pet. denied) (concluding plaintiff made her prima facia showing of age discrimination through disparate treatment by presenting evidence that her hours had been gradually reduced while younger employees' hours remained the same; she was not trained for additional positions while younger employees were provided training opportunities; she was discharged while

17

younger employees remained; and she was not the only member of the protected class who met this fate).

A prima facie case of sex discrimination under the TCHRA requires similar proof. Cabrera needed to present evidence that she: (1) was a member of the protected class (that is, a female[10]); (2) was qualified for her position; (3) suffered a final, adverse employment action; and (4) was either (a) replaced by a male or (b) otherwise treated less favorably than similarly situated employees. *See Tex. Dep't of State Health Servs. v. Resendiz*, 642 S.W.3d 163, 173 (Tex. App.—El Paso 2021, no pet.); *see also Tex. Veterans Comm'n v. Lazarin*, No. 13-15-00045-CV, 2016 WL 552117, at *4 (Tex. App.—Corpus Christi–Edinburg Feb. 11, 2016, pet. denied) (mem. op.) (applying the same); *see generally Flores*, 612 S.W.3d at 312 ("Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005))). Looking once more only to the fourth element, Cabrera was replaced by a female and provides no evidence of disparate treatment in the alternative. *See Flores*, 612 S.W.3d at 312; *see also Reg'l Pool All. v. NorthStar Recovery Servs., Inc.*, No. 13-21-00045-CV, 2022 WL 1412362, at *3 (Tex. App.—Corpus Christi–Edinburg May 5, 2022, no pet.) (mem. op.) ("[W]hen a governmental entity establishes the absence of a jurisdictional fact, the burden shifts to the plaintiff to raise a genuine issue of material fact for the jury to resolve; otherwise, the trial court should rule on the plea as a matter of law." (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)));

---

[10] Cabrera did not assert that her sexual orientation constituted a protected class.

18

*Lazarin*, 2016 WL 552117, at *4 (concluding the plaintiffs, two males, were unable to make a prima facia showing of sex discrimination because they were replaced by males and otherwise failed to show others similarly situated had been treated more favorably); *Wang v. Univ. of Tex. at Austin*, No. 04-13-00065-CV, 2013 WL 5570824, at *3 n.4 (Tex. App.—San Antonio Oct. 9, 2013, no pet.) (mem. op.) ("In regard to Wang's gender discrimination claim, Hall is not outside Wang's protected class as they are both females.").

Accordingly, we conclude that Cabrera failed to present evidence to raise a genuine issue of material fact regarding the essential elements of her prima facie age and/or sex discrimination claim. *See Flores*, 612 S.W.3d at 305, 314; *see, e.g.*, *Mission Consol.*, 372 S.W.3d at 642–43 (concluding a dismissal of plaintiff's age discrimination case was appropriate where the district presented undisputed evidence that Garcia was replaced by someone three years older, "thus triggering Garcia's duty to raise a fact question on the issue of discriminatory intent," which she never did, and therefore, there was "no countervailing evidence raising a material fact question on discriminatory intent"). Therefore, the TCHRA does not waive EEISD's immunity from suit, the trial court erred in denying EEISD's plea to the jurisdiction, and dismissal is appropriate. *See Flores*, 612 S.W.3d at 314; *see also Lazarin*, 2016 WL 552117, at *5 (concluding "[b]ecause neither [plaintiffs] established a prima facie case of age discrimination, the trial court erred in denying [the governmental entity's] plea to the jurisdiction," and reversing and rendering judgment of dismissal); *see generally Riojas*, 640 S.W.3d at 536 ("Because the City challenged the existence of these jurisdictional facts—as opposed to whether Riojas had

19

adequately pleaded them—its plea is treated as a motion for summary judgment."). We sustain EEISD's issues on appeal.

### III.    CONCLUSION

We reverse the trial court's order denying EEISD's plea to the jurisdiction and render judgment dismissing Cabrera's claims against EEISD for lack of jurisdiction.

CLARISSA SILVA
Justice

Delivered and filed on the
11th day of August, 2022.